540 P.2d 695

**STATE of Arizona, Appellee,**

v.

**Walter Allen OWENS, Appellant.**

**No. 3048.**

Supreme Court of Arizona,
In Banc.

Sept. 30, 1975.

Bruce E. Babbitt, Atty. Gen., N. Warner Lee, Former Atty. Gen., Frank T. Galati, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, Garth V. Smith, Deputy Public Defender, Phoenix, for appellant.

**224**

GORDON, Justice:

The appellant Walter A. Owens was convicted of the crime of assault with a deadly weapon and was sentenced to a term of not less than one and one half nor more than three years in the Arizona State Prison.

The appellant's first contention is that he was denied his right to a speedy trial under Rule 236 of the Arizona Rules of Criminal Procedure and the Sixth Amendment to the United States Constitution. The facts which relate to this issue can be summarized as follows. On June 11, 1973, Owens cut his baby's throat with a garden tool during a dispute with the child's mother. He surrendered the same day and was booked on a charge of assault with a deadly weapon. On June 21, 1973, the defendant's "Motion for Examination of Defendant's Mental Condition (pursuant to A.R.S. § 13-1621)" was granted and he was committed to the Arizona State Hospital for observation. On July 30, 1973, the trial court determined "that the defendant does now understand the nature of the proceedings pending against him and is now able to assist counsel in his own defense." The preliminary hearing was held on August 29th and 30th.

After an apparent suicide attempt Owens was committed to the Arizona State Hospital for further tests on September 6th. On September 14th he was arraigned and the information accusing him of assault with a deadly weapon was filed. The defendant did not waive his right to a speedy trial and the trial was set for October 24th. Owens was found to be "not able to adequately assist counsel in his own defense" on October 23rd and it was ordered he remain in the State Hospital pending further examination. An order was issued vacating the trial date of October 24th. On the basis of additional reports completed in November and December the trial court concluded on January 8, 1974, that the defendant was "competent to stand trial and assist in his own defense." On January 14th an order was issued transferring the

case to another Judge and a trial date of February 11th was set. An oral stipulation between the parties was entered into on February 8th vacating the trial date of February 11th and resetting it for February 21st.

On February 15th the parties stipulated that the defendant be examined by three additional psychiatrists in order to determine "whether or not the defendant was legally sane or insane at the time he committed the offense with which he is charged." It was "[f]urther ordered continuing the trial of this cause until such examinations are completed * * *." A trial date of March 6th was later set.

On March 5th the trial court found the defendant competent to stand trial. The March 6th trial date was vacated and the case was transferred back to the original trial judge. On March 11th the March 5th transfer order was vacated and the matter was transferred to another Judge for reassignment. The case was reassigned on March 12th. On March 21st a trial date of April 22nd was set and the trial eventually commenced on that date. At the outset of the proceedings the defendant's motion to dismiss alleging deprivation of his right to a speedy trial was denied.

Rule 236 of the Arizona Rules of Criminal Procedure implements Article 2, Section 24 of the Arizona Constitution which states that "[i]n criminal prosecutions, the accused shall * * * have a speedy public trial * * *." The Sixth Amendment to the United States Constitution contains similar language and applies to the states through the due process clause of the Fourteenth Amendment. *State v. Thornton*, 108 Ariz. 119, 493 P.2d 902 (1972). Rule 236 states:

"When a person has been held to answer for an offense, if an information is not filed against him for the offense within thirty days thereafter, or when a person has been indicted or informed against for an offense, if he is not brought to trial for the offense within sixty days after the indictment has been

found or the information filed, the prosecution shall be dismissed upon the application of such person, or of the county attorney, or on the motion of the court itself, unless good cause to the contrary is shown by affidavit, or unless the action has not proceeded to trial because of the defendant's consent or by his action. * * *"

 We have repeatedly stated that the question of whether a defendant's right to a speedy trial was violated must be considered from a common sense viewpoint. *State v. Churchill*, 82 Ariz. 375, 313 P.2d 753 (1957). In *Churchill* we added:

"Before a defendant is entitled to an order of dismissal under Rule 236 (supra), he must bring himself within the spirit and intention of the rule. The principle purpose being not to allow the guilty to escape upon technicalities, but to shield the innocent by preventing *unnecessary* and *unreasonable* delays. *Good cause* means substantial reason, that is, one that affords a legal excuse." 82 Ariz. at 380, 313 P.2d at 756.

We find that "good cause" existed for the delay in the commencement of the trial in this case. It was largely "because of the defendant's * * * action" that four attempts to start the trial within the sixty day period were unsuccessful.

Under Rule 8.4(a) of the new Arizona Rules of Criminal Procedure "[d]elays occasioned by or on behalf of the defendant, including * * * delays caused by an examination and hearing to determine competency * * * [or] the defendant's * * * incompetence" are periods excluded from the computation of the speedy trial time limits contained in Rules 8.2 and 8.3. The same exclusion was implied under Rule 236. *State v. Bowman*, 105 Ariz. 307, 464 P.2d 330 (1970), cert. denied 398 U.S. 943, 90 S.Ct. 1863, 26 L.Ed.2d 280; *State v. Miranda*, 98 Ariz. 18, 401 P.2d 721 (1965). Thus the period during which mental examinations were conducted between the filing of the information on September 14, 1973, and the finding of incompetency on October 23, 1974, is excludable from the sixty day limit.

The defendant's incompetency caused the first trial date of October 24th to be vacated. After Owens was found competent on January 8, 1974, the second trial date of February 11th was set. When the trial date was vacated upon stipulation on February 8th in order that the defendant could be given further tests to determine his competency to stand trial, thirty-four days deductible from the sixty day limitation in Rule 236 had elapsed. The third trial date of February 21st was vacated because of the continuing tests. The fourth trial date of March 6th was apparently vacated because a finding of competency was not made until March 5th, leaving too little time to prepare for trial.

The October 24th, February 11th, February 21st and March 6th trial dates all would have complied with the requirements of Rule 236 had they not been vacated because of mental examinations. Only the fifth and eventual trial date of April 22nd fell beyond the sixty day period. After taking into account the excluded periods of September 14th to January 8th and February 11th to March 5th, the trial commenced eighty-two days after the information was filed. As we have previously stated "[t]here are * * * cases where an accused may waive his right to a speedy trial by filing dilatory motions prior to the expiration of the sixty days wherein he must be brought to trial." *State v. Pruett*, 101 Ariz. 65, 415 P.2d 888 (1966). While there is no evidence that the defendant intentionally sought to delay the trial, it is clear that the numerous mental examinations which were conducted in order to protect the defendant's constitutional rights frustrated several efforts to comply with Rule 236. Under the facts of this case we find that the delay of twenty-two days beyond the sixty day limitation was the result of the defendant's actions and the trial court properly denied the motion to dismiss. See *State v. Mathis*, 110 Ariz. 254,

517 P.2d 1250 (1974); *State v. Miranda,* supra.

Owens' contention that he was denied his constitutional right to a speedy trial because of the ten and one-half month delay between arrest and trial is also without merit. In *State v. McDonald,* 111 Ariz. 159, 526 P.2d 698 (1974), we stated:

"The United States Supreme Court has set out the criteria for determining whether a defendant has been denied the right to a speedy trial in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972). In evaluating the various factors to be weighed by the court on appeal in determining whether there has been a deprivation of a right to a speedy trial, the court has identified four factors which must be taken into account: the length of the delay; the reason or cause of the delay; whether there was a waiver of the right by the defendant; and if there was any actual prejudice to the defendant because of the delay." 111 Ariz. at 162, 526 P.2d at 701

■ The length of delay is the least conclusive of the factors, and where the delay is substantial acts merely as a triggering mechanism requiring an analysis of the other factors. *Barker v. Wingo,* supra; *State v. Trotter,* 110 Ariz. 61, 514 P. 2d 1249 (1973). The delay in this case of ten and one-half months clearly leads us to consideration of the other factors.

■ While the defendant refused to waive his right to a speedy trial, the "reason or cause of the delay" can largely be traced to the numerous mental examinations undertaken to protect the defendant's right and not dilatory tactics by the prosecution. *State v. Pruett,* supra. As another court has noted, "where the delay results from a concern by the trial court over the mental competency of the defendant to stand trial, 'the courts have been exceedingly reluctant to find constitutional infirmity even in very long delays.'" *Ricon v. Garrison,* 517 F.2d 628 (4th Cir. 1975).

There is no evidence Owens was prejudiced by the delays. He fails to allege that any witnesses were unavailable or suffered from foggy memories because of the lapse of time. *State v. Mendoza,* 109 Ariz. 445, 511 P.2d 627 (1973). As appellant points out in his brief, "[m]ost of the essential facts in this case were uncontested" and "[e]ye-witnesses * * * testified and detailed evidence was adduced concerning the events leading to, during and after the alleged assault." The lack of prejudice is further manifested by the fact that the sentence imposed dated from June 12, 1973, the day after the defendant's arrest, rather than from the date of his conviction or sentencing. *State v. Pruett,* supra. We conclude that the appellant was not denied his constitutional right to a speedy trial.

The appellant's second contention is that the trial court erred in allowing a prosecution expert witness to testify on ultimate facts which should have been left to the jury's determination. During direct examination of the witness the following exchange took place:

"Q. * * * Based on your medical experience, could this laceration have been consistent with any accidental act?

"MR. MAURER: Objection to that question. He is asking this witness to speculate about something, and unless he can lay more foundation—

"THE COURT: Sustained.

* * * * * *

"Q. Now, based on your experience, with your medical experience do you have an opinion as to whether or not this particular cut on Brenda Jones was occasioned by an accidental means or another means?

"MR. MAURER: Objection to that, Your Honor. That is for the jury to determine and not this witness.

"MR. HENZE: Your Honor, this witness is a medical expert witness and the jury is entitled to hear his opinion, and in helping them make their determination.

"THE COURT: Sustained.

"Q. Doctor, could this cut have been made by the baby, Brenda, falling on a sharp object?

"A. In my opinion, no.

"MR. MAURER: Your Honor, counsel is again asking the witness to speculate about something and—

"THE COURT: I know, and he has already answered.

"MR. MAURER: Objection to the response and we ask that it be stricken from the record.

"THE COURT: The objection is made too late. Overruled."

The physician testified that the infant sustained multiple injuries, including skull fractures and "a long laceration that went almost from one ear to the opposite ear, which transected all the muscles in the upper throat." He also stated that he had seen "hundreds" of other individuals with lacerations, but that this cut was "much deeper" than any of the others he had observed.

■■■ The primary consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that people of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact. *People v. Cole,* 47 Cal.2d 99, 301 P.2d 854 (1956). The subject of severe lacerations "is not one of such common experience that laymen may not be assisted by the opinion of a doctor, who has special knowledge regarding anatomy and injuries to the human body." *People v. Cole,* supra. The expert's opinion in the instant case was admissible as "the observation of a trained mind and * * * not mere speculation," leaving the alternate theories advanced by the prosecution and defense as "questions of fact properly and exclusively within the province of the jury." *State v. Cohen,* 93 R.I. 215, 172 A.2d 737, 173 A.2d 925 (1961).

The expert's opinion was not inadmissible by virtue of the fact that it involved an opinion as to the ultimate facts in the case. As we stated in *State v. Keener,* 110 Ariz. 462, 520 P.2d 510 (1974):

"Whether a witness is qualified as an expert witness rests in the sound discretion of the trial court, and that decision will not be reviewed unless there is a showing of abuse of discretion. *State v. Melot,* 108 Ariz. 527, 502 P.2d 1346 (1972); *Carrel v. Lux,* 101 Ariz. 430, 420 P.2d 564 (1966). An expert witness is one who possesses skill and knowledge superior to that of men in general, and it is the rule in this State that an expert may state his opinion upon a subject even though it may involve an opinion on an ultimate fact to be determined by the trier of fact. *Watson v. Southern Pacific Co.,* 62 Ariz. 29, 152 P.2d 665 (1944). 31 Am.Jur.2d Expert and Opinion Evidence § 22 p. 518 at 520." 110 Ariz. at 465–66, 520 P.2d at 513–14.

Because the answer objected to was properly admissible as expert testimony under the facts of this case, we need not decide whether the statement would have been admitted in any case because of the tardy objection by defense counsel.

■■■ The appellant's final contention is that the prosecutor committed reversible error during his arguments to the jury by misstating testimony given by the State's expert witness.

The prosecutor told the jury during closing arguments:

"The second thing that he said, and this is his opinion but you may consider his opinion because he is a medical doctor and an expert, you don't have to believe it but you may consider it. I said, 'Doctor, is that cut, that wound that you saw, that laceration, consistent with having been incurred accidentally?' And he said in his opinion, 'No.' I ask you to remember that about the doctor's testimony.

\* \* \* \* \* \*

228

"It was a doctor who said it could not have been an accident."

It is uncontroverted that the physician never stated the cut could not have been the result of an accident. We need not consider, however, whether the comments were so prejudicial that they constituted reversible error because the defendant's failure to object during or just after the closing arguments constituted a waiver of any right to review on appeal. *State v. Holmes*, 110 Ariz. 494, 520 P.2d 1118 (1974); *State v. Kelley*, 110 Ariz. 196, 516 P.2d 569 (1973). A party's failure to object will be overlooked only where we find fundamental error. *State v. Shing*, 109 Ariz. 361, 509 P.2d 698 (1973). Any prejudice resulting from the prosecutor's misstatement of the evidence in this case was diminished by the trial court's cautionary instruction to the jury that counsel's "arguments are not evidence" and that "[i]f any comment of counsel has no basis in the evidence, you are to disregard that comment." *State v. Taylor*, 109 Ariz. 267, 508 P.2d 731 (1973).

The conviction and sentence are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.