608 P.2d 302

STATE of Arizona, Appellee,

v.

Thurman Laverle DICKEY, Appellant.

No. 4109.

Supreme Court of Arizona, In Banc.

Feb. 25, 1980.

Rehearing Denied March 25, 1980.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Criminal Division, Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

Jay M. Abbey, Pinetop, for appellant.

GORDON, Justice:

Thurman Laverle Dickey appeals from a judgment of conviction, after a jury trial, of first degree murder. Appellant was sentenced to life imprisonment without possibility of parole for twenty-five years. Assuming jurisdiction pursuant to A.R.S. § 13–4031, we affirm.

Appellant raises the following issues:

1. Whether a new trial should be granted, because part of the transcript of the hearing on appellant's motion for a new trial is unavailable;

2. Whether testimony about a statement made by appellant prior to the crime was erroneously admitted into evidence;

3. Whether appellant's *Miranda* rights were violated;

4. Whether certain portions of expert testimony for the defense were improperly excluded from evidence;

5. Whether the trial court incorrectly instructed the jury;

6. Whether there was sufficient evidence to support a verdict of first degree murder.

Viewing the evidence in the light most favorable to the state, *State v. Childs*, 113 Ariz. 318, 553 P.2d 1192 (1976), the following facts emerge. On the evening of April 7, 1977, the victim, Karl Koester, was driving a van with three passengers from a cookout in Snowflake in Navajo County. Koester mistakenly thought he recognized a trailer of a friend which he saw as the van passed by appellant's ranch. He turned the van off the main road and proceeded onto appellant's property. After ascertaining that the trailer was not the one he had believed it to be, Koester left the property and drove back onto the main road toward Snowflake.

At the same time that Koester was driving on the Dickey Ranch, appellant, accompanied by Charles Lynn Johnson, was driving his pickup back to his home from Snowflake. Johnson was having a conversation with Hobart Powers on a CB radio when appellant's wife, calling from home, broke into the conversation and stated in a frightened voice that a strange vehicle was riding around on the Dickey property. At this time appellant's pickup was about one-quarter of a mile from the ranch, and he observed Koester's van exiting. The Koester van passed appellant's pickup, and appellant turned around and followed the van. Appellant was aware that Mrs. Dickey had told Johnson, over the radio, that she was not harmed or in danger. Johnson said to Mrs. Dickey, "We got it in sight and we are in chase."

When Koester realized the van was being followed he sped up and pulled off the road with the van's lights out. Appellant's pickup drove by the hidden van. Koester then drove back onto the road toward Snowflake, where he met appellant's vehicle coming back in the opposite direction. Koester pulled his van off the road, and appellant did the same with his pickup. When a passenger in the van, Dale Norman, began rolling down his window, Johnson fired a

pistol from the pickup. Johnson testified that this was a warning shot, fired at appellant's request with appellant's .357 magnum pistol, which appellant kept loaded in the pickup's glove compartment.

After the pistol was fired, Koester drove his van back on the road toward Snowflake, and appellant pursued. Koester then quickly turned his van around facing the pickup and the two vehicles stopped within three to four feet of each other. About five minutes had elapsed since Johnson fired the pistol.

As soon as the van stopped, Koester got out of the van and yelled, "What the fuck do you guys want?" Appellant took a pistol, which was designed to fire shotgun shells, from the seat next to him and, firing through his rolled down window, shot Koester in the chest. Koester fell in the road and died.

Johnson testified that the "shotgun pistol" had been on the dashboard of the vehicle, but at some point after he and Dickey had left Snowflake, appellant placed it on the seat beside him. Immediately after the shooting and at the time the police arrived, appellant appeared very calm.

## THE MISSING TRANSCRIPT

■ The transcript for the first of three days of hearings on appellant's original motion for new trial is unavailable because of the failure of the court reporter to transcribe his notes. On May 25, 1979, appellate counsel, who had not represented Dickey at trial, filed in this Court a "Motion for Completion of Record or in the Alternative to Remand for a New Trial or for Judgment of Not Guilty." On June 5, 1979, we denied

that motion and entered an order as follows:

"FURTHER ORDERED: This matter shall be remanded to the trial court for the limited purpose of allowing appellant to present a second motion for new trial to the trial court since the transcript of the original motion for new trial is unavailable. Said motion shall be heard by the trial court within 20 days of the date of this order. If the motion is denied, the transcript of the hearing shall be prepared immediately and forwarded to this Court as part of the record on appeal."

On June 21, 1979, a second motion for new trial hearing was held. The transcript of that hearing has been filed with this Court. On appeal, however, appellant again maintains that the unavailability of part of the transcript for the first hearing can only be remedied by a new trial. We disagree.

Appellant asserts in this Court, as he did at the second hearing, that the lapse of time between trial in September 1977 and the second hearing on June 21, 1979, made it impossible to adequately argue a second motion for new trial. He does not, however, allege any specific prejudice, such as the unavailability of witnesses, caused by the passage of time, nor does he claim the existence of a trial defect that could not be argued, in a motion for new trial, from the complete transcript of the trial.[1] Appellant contends that he is placed in the position of appealing with an incomplete record. Although serious problems may be presented when an appellate court seeks to review a trial judgment without a complete record, see State v. Masters, 108 Ariz. 189, 494 P.2d

---

[1] In his first motion for new trial, appellant alleged several instances of juror misconduct. It is clear from the minute entries and from the partial transcript which is available that the jurors involved all denied misconduct and that the trial judge, after a thorough investigation, found these jurors more credible than appellant's witnesses, who were spectators at trial. Appellant did not raise this issue in his second motion for new trial or in this appeal, and we consider the contention abandoned.

Moreover, although the first written motion for a new trial has not been included in the

record, the transcript of the second motion hearing indicates that the new defense counsel was aware of the contents of the first motion. At the second hearing, on June 21, 1979, he mentioned four of the claims advanced in the first motion. One, prosecutorial misconduct, was waived by new counsel. A second, improper juror instructions on first degree murder, has not been raised on appeal. The other two issues were presented to the trial court at the second hearing and are raised on this appeal.

1319 (1972); *State v. Madrid*, 20 Ariz.App. 51, 510 P.2d 50 (1973), this case does not present the problem of a partial record. Our order of June 5, 1979, gave appellant the opportunity to make a second motion for new trial so that he could appeal to this Court with a complete record, and we can now find no impediment to effective appellate review.

## APPELLANT'S STATEMENT MADE PRIOR TO THE SHOOTING

■ Margaret Baker, a witness for the state, testified to a statement made by appellant sometime between January 1 and March 15, 1977. Mrs. Baker stated that she had been a bartender at the Snowflake Inn in Snowflake and that appellant had been a customer. She related an incident, where appellant, who has only limited use of his legs and left arm, fell down when he went to the restroom:

> "[Dickey] fell and came back, people helped him up, he came back and one of the customers there said to him, 'Well, boy, living out there where you do, you know, what would you do if you ever had any trouble or was hurt or needed help,' or something to that effect, and he says, 'I don't worry about it, I always carry a bit in my truck,' he said, 'If anybody ever messes with me, I'll blow them away.'"

Appellant, citing *State v. Mincey*, 115 Ariz. 472, 566 P.2d 273 (1977), *rev'd on other grounds, Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), contends that the above statement was inadmissible because it was not directed toward a specific class of persons. In *Mincey*, we found that defendant's statement referred specifically to police and was, therefore, admissible to prove defendant's mental state when he shot a policeman. Since the statement in *Mincey* referred to the same specific class of persons, policemen, as the one involved in that crime, we found the statement relevant. The ultimate test of admissibility of a prior statement is whether that statement is relevant for a permissible purpose. The fact that the statement in the instant case does not refer to a specific person or class does not necessarily make it irrelevant and inadmissible.

The test of relevance is whether the evidence tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 17A A.R.S., Rules of Evidence, Rule 401. Using this test, we find that the testimony of Mrs. Baker was relevant for several permissible purposes. Because appellant's earlier statement concerned circumstances which were similar to those surrounding the shooting, the statement tended to prove that appellant reflected upon shooting the occupants of Koester's van during the chase and that he placed his shotgun pistol on the seat beside him with this purpose in mind. Mrs. Baker's testimony was properly admitted.

## STATEMENTS MADE PRIOR TO *MIRANDA* WARNINGS

Appellant claims that the testimony of Officer Glen Flake concerning statements made by appellant to him were inadmissible, because they were elicited by questions asked before required *Miranda*[2] warnings were given. Deputy Sheriff Flake testified at the hearing on appellant's motion to suppress that he and another police officer were the first law enforcement officials to arrive at the scene of the crime. They went to the scene in response to a CB radio message stating, "There is one dead and we have three in custody." No other details were known. When he arrived at the scene, Flake saw the van and pickup, the body of Karl Koester in the road, and several people lined up against the van as though they were being held there.

Officer Flake inquired generally, "Who shot him?" Appellant, sitting in the pickup, said that he had done it. Flake then asked what he had shot Koester with and where the gun was. When appellant told him, Flake reached into appellant's car, took the gun, and then asked appellant why he had

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

shot Koester. Appellant responded. The state introduced Officer Flake's testimony about appellant's reply to the last question in its case in chief. The state attempted to show that appellant's initial statement to police, which lacked several exculpatory details added by appellant at trial, was a more correct version of the events surrounding the shooting than appellant's trial testimony.

Appellant urges that *Miranda* warnings were required as soon as he had admitted shooting Koester. His argument appears to be that the police do not need to eliminate all affirmative defenses before concluding that a crime had probably been committed. This contention erroneously assumes that *Miranda* warnings must be given as soon as the police have probable cause to arrest.

■ The critical issue is not whether probable cause existed, but whether Officer Flake's questions amounted to custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *State v. Hatton*, 116 Ariz. 142, 568 P.2d 1040 (1977). Custodial interrogation can occur only "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. Where, as here, the person being questioned is not in custody, the test is whether a reasonable person would feel he was deprived of his freedom in a significant way. *State v. Hatton, supra.*

■ The existence of probable cause to arrest is certainly relevant, but it is not decisive. *State v. Kennedy*, 116 Ariz. 566, 570 P.2d 508 (App.1977); *cf. State v. Bainch*, 109 Ariz. 77, 505 P.2d 248 (1973). The totality of the circumstances must be considered. *See State v. Starr*, 119 Ariz. 472, 581 P.2d 706 (App.1978). In viewing the circumstances surrounding Officer Flake's questioning of appellant, we bear in mind the following statement from *Miranda, supra*:

"General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-find-

ing process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." 384 U.S. at 477–478, 86 S.Ct. at 1629–1630, 16 L.Ed.2d at 725–726.

■ We do not believe that the trial court committed clear and manifest error in finding that appellant was not subjected to custodial interrogation. *See State v. Garrison*, 120 Ariz. 255, 585 P.2d 563 (1978). Appellant was questioned immediately after the first officers arrived at the scene of the shooting. The questions were brief and uninterrupted. Their function was to enable the police to ascertain what had happened, who was involved, and whether a crime had actually been committed. Appellant remained seated in his pickup truck as he had been prior to the arrival of the police. We conclude the trial court did not commit reversible error.

## EXCLUSION OF EXPERT TESTIMONY

■ Appellant contends that the trial court erred in excluding certain testimony of Dr. Gray, a psychiatrist. Dr. Gray gave a deposition which, except for the disputed portions, was read to the jury.

Dr. Gray's deposition was used to support appellant's theory of self-defense. In the excluded portions of the deposition, Dr. Gray stated that he believed that appellant acted out of fear when he shot Karl Koester and that fear was his sole conscious motivation. He also stated that appellant would not have fired the shot had he not been in fear of his life and that he did not observe any evidence in his examination of appellant to indicate that appellant's act was the product of reflective thinking.

We believe that the trial court committed no error in excising the above material from Dr. Gray's deposition. Rule 702, Rules of Evidence, 17A A.R.S., provides:

"If scientific, technical, or other specialized knowledge will assist the trier of

fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert * * * may testify thereto in the form of an opinion or otherwise."

Rule 702 has not changed the case law developed in this area. *See, e. g., State v. Owens*, 112 Ariz. 223, 540 P.2d 695 (1975). The primary concern in the admission of expert testimony is "whether the subject of inquiry is one of such common knowledge that people of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." *State v. Owens*, 112 Ariz. at 227, 540 P.2d at 699. This determination is left to the sound discretion of the trial court. *See State v. Means*, 115 Ariz. 502, 566 P.2d 303 (1977).

In the present case, the jury heard Dr. Gray's opinion of several traits of appellant's personality, such as being overly protective, easily fearful, and not prone to violence. These were matters about which expert opinion may provide assistance to a lay jury. The determination whether appellant was actually fearful at the time of the shooting, however, depends upon which version of the facts the jury chose to believe. Appellant testified that he was in fear for his life when he shot Koester. If the jury believed appellant's testimony, that the victim rushed at his pickup, yelled that he would kill appellant, and yanked open the driver's door of the pickup, the jury would not require psychiatric testimony to decide that appellant was afraid. Such expert opinion would add nothing to the jury's own common knowledge and experience. The statement that Dr. Gray found no evidence in his examination that appellant acted out of reflection is also not helpful in this case. The issue whether appellant was thinking reflectively prior to shooting Koester could be resolved by the jury without expert assistance, once it had determined the facts surrounding the shooting. We find no abuse of discretion of the trial court.

### INCORRECT INSTRUCTIONS

After the jury had retired, a question was submitted through the bailiff to the court, which read: "Does jury have to have 100 percent agreement on self-defense verdict? * * * Before you can proceed to next possible verdict?" The court answered this question orally as follows:

"Ladies and gentlemen, we have received your question concerning the order of your deliberations, and the Court will read you an additional instruction in that regard.

"One of the elements of the crimes of murder and manslaughter is that the killing was unlawful. Under the direction of your Foreman you may discuss the various elements of the crimes enumerated in the verdict forms given you in any order desired. Before you can reach a verdict of guilt as to any charge, you would have to find that the State has proven each element of that charge beyond a reasonable doubt, including that the killing was unlawful, that is, that it was not accomplished in self-defense or that the defendant was not entitled to the claim of self-defense."

Appellant now claims error in two respects. First, the instruction was misleading, because it did not state that the jury should return a "not guilty" verdict if it had reasonable doubt over self-defense. Second, the instruction should not have been read alone; all of the instructions should have been repeated with the additional instruction as part of the whole.

■ We note initially that defense counsel raised neither of these objections prior to the reading of the instruction. His only objection at that time was that the last phrase of the instruction should not have been included. This last objection has not been raised on appeal. Consequently, appellant may not now claim error, *see State v. Tinghitella*, 108 Ariz. 1, 491 P.2d 834 (1971), unless the error is fundamental. *State v. Dippre*, 121 Ariz. 596, 592 P.2d 1252 (1979).

We do not find fundamental error in the additional instruction. The instruction was not misleading. Its purpose was to provide guidance to the jury as to the order of deliberations. There is no indication that the jury did not understand the earlier instructions which clearly explained the law of self-defense, the state's burden of proof, and the effect of reasonable doubt. Nor do we think the trial court was required to reread all of the instructions. Rule 22.3, Rules of Criminal Procedure, 17 A.R.S.[3] provides that the trial court *may* read other instructions to place the additional instruction in context, but because the instruction in question was procedural, the trial court did not abuse its discretion in reading it alone. *Cf. Hightower v. State*, 62 Ariz. 351, 158 P.2d 156 (1945).

### SUFFICIENCY OF EVIDENCE OF FIRST DEGREE MURDER

Appellant finally claims that there was insufficient evidence for the jury to find premeditation and thus reach a verdict of first degree murder. To sustain a verdict of first degree murder, there must be substantial evidence of premeditation. *See State v. Pittman*, 118 Ariz. 71, 574 P.2d 1290 (1978). The evidence may be circumstantial. *Pittman, supra.* In the present case we find that the following substantial evidence, both direct and circumstantial, supports the jury's verdict: testimony that appellant chased the victim's van; testimony that he placed the "shotgun pistol" on the seat beside him on the way back from Snowflake; testimony that appellant said he would "blow away" anyone who "messed" with him; testimony of appellant's calm demeanor after the shooting. Finally, appellant, himself, testified that he reached for his pistol after Koester opened the pickup door. This indicates a deliberate decision to shoot the victim, and because of the deadly nature of the weapon, there is a strong inference of an intent to kill. The fact that appellant also testified that he was afraid and that Koester was attacking him may raise a possibility of self-defense, but it does not negate premeditation. Whether the premeditated killing was self-defense or murder was a separate question, decided adversely to appellant.

We find no fundamental error. *See* A.R.S. § 13–4035(B); *State v. Rose*, 121 Ariz. 131, 589 P.2d 5 (1978). The judgment and sentence are affirmed.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concur.

---

**3.** Rule 22.3 reads as follows:

"Further review of evidence and additional instructions

"After the jurors have retired to consider their verdict, if they desire to have any testimony repeated, or if they or any party request additional instructions, the court may recall them to the courtroom and order the testimony read or give appropriate additional instructions. The court may also order other testimony read or give other instructions, so as not to give undue prominence to the particular testimony or instructions requested. Such testimony may be read or instructions given only after notice to the parties."