668 P.2d 874

**STATE of Arizona, Appellee,**

v.

**James Dewain HALLMAN, Appellant.**

No. 5614.

Supreme Court of Arizona,
En Banc.

June 24, 1983.
Rehearing Denied Sept. 13, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Crane McClennen, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Michael G. Sullivan, Deputy Public Defender, Phoenix, for appellant.

FELDMAN, Justice.

Defendant, James Dewain Hallman, was convicted of first degree murder and attempted sexual assault, a dangerous felony. The trial court imposed a sentence of life imprisonment without possibility of parole for 25 years on the murder count, and the presumptive term of 7.5 years on the attempted sexual assault count to be served consecutively to the sentence of life imprisonment. Defendant appeals the convictions and the consecutive nature of the sentences. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 13–4031.

The murder victim, Daniel Art Geyer, age 33, owned a landscaping business. Defendant, age 18, worked for Geyer. Geyer and defendant were good friends and had what witnesses described as a father-son relationship. In August of 1981, defendant moved into Geyer's home, which Geyer shared with his girl friend, Mary Ann Meyers, and another friend, Don McMurtrey. After the defendant moved in, there were two incidents where he allegedly molested Meyers while she slept. After the second incident, Geyer and another friend confronted the defendant and gave him a beating. Defendant promised he would never do anything like that again.

On October 26, 1981, the evening before the murder, the group met at a neighborhood bar. Geyer went home early in the evening and McMurtrey followed shortly after. About an hour later, Meyers and defendant walked home together. When they arrived home, they found Geyer passed out on the living room couch. Meyers tried unsuccessfully to wake Geyer and finally covered him with a blanket, went alone to their bedroom and fell asleep. Meyers woke up around 3:00 a.m. when she discov-

ered the defendant molesting her. Meyers screamed that if defendant touched her again she would "blow his hand off" with a gun. Defendant apologized. Meyers told him to get out of her room and went back to sleep.

McMurtrey left for work around 5:30 that morning and as he left, Geyer woke up and said goodbye to him. Apparently Geyer fell back asleep. Sometime shortly after McMurtrey left, defendant woke up, took a gun from a nearby drawer, walked over to where Geyer was sleeping and shot him once in the head.

Defendant then went to Meyer's bedroom, held a gun on her and ordered her to take off her clothes because he was going to rape her. Meyers convinced defendant that she needed a glass of water, and while he was out of the room she escaped and called the police.

Defendant left the scene in Geyer's truck, but returned a few hours later and was apprehended by the police.

On appeal, defendant claims that the trial court erred in:

   (1) admitting into evidence a photograph of the victim;

   (2) precluding defendant's expert witnesses from giving their opinions of defendant's mental condition at the time of the shooting;

   (3) allowing the state to show bias and prejudice on the part of a defense witness;

   (4) refusing to grant defendant's motion for mistrial;

   (5) refusing to grant defendant's motion for judgment of acquittal on the felony murder charge;

   (6) imposing consecutive sentences.

## PHOTOGRAPH OF VICTIM

Defendant contends that the trial court erred in admitting a photograph of the victim. The photograph in question showed Geyer's head and the location of the bullet wound which was sutured shut. It also indicated a blackening of the victim's eyelids. There was a small amount of blood near the wound and on a towel under Geyer's head.

■ Evidence which may tend to inflame may be admitted if it is relevant and if its probative value outweighs the danger of unfair prejudice caused by its admission. *State v. Chapple,* 135 Ariz. 281, 288, 660 P.2d 1208, 1215 (1983); *State v. Gerlaugh,* 134 Ariz. 164, 169, 654 P.2d 800, 805 (1982). The evidence may be necessary, for example, to show the identity of the victim, illustrate how the crime was committed, aid the jurors in understanding testimony or show the nature and location of mortal wounds if any of these matters are in question. *State v. Chapple, supra; State v. Gerlaugh, supra.* Before such evidence may be admitted, however, the trial court must determine whether its probative value outweighs any potential prejudice of the jury. *State v. Chapple, supra.* This determination involves consideration of evidentiary factors, is therefore within the sound discretion of the trial court and will not be disturbed absent an abuse thereof. *Id.*

■ In the instant case, we find that the trial court did not abuse its discretion in admitting the photograph of the victim. Initially, we do not believe that the photograph is gruesome or inflammatory. Even assuming some tendency to inflame, we think the photograph's probative value outweighed the improper potential. The defendant was charged with first degree murder, so the issues of premeditation and intent were present and contested. The photograph depicted the location of the bullet wound and the angle of entry of the bullet. A single bullet wound located squarely in the victim's right temple tends to indicate a careful and therefore deliberate act. Viewing the photograph, therefore, could have helped the jury determine whether the killing was premeditated. *See State v. Hicks,* 133 Ariz. 64, 69, 649 P.2d 267, 272 (1982).

In addition to the issue of premeditation, the photograph may have assisted the jury in understanding the testimony of the medical examiner. Defense counsel cross-examined the medical examiner about the ab-

sence of powder burns or powder tattooing on the victim. The significance of these matters relates to the distance of the gun from the skin when the shot was fired. The witness explained that he found no evidence of powder burns or tattooing, but emphasized that with gunshot wounds to the head, the hair tends to screen out some of the particles. Thus, the jurors could have used the photograph in weighing this portion of the medical examiner's testimony.

We note that the trial court did exclude three photographs of the victim, finding that they were cumulative. The admission of all four may well have had an unfairly prejudicial effect on the jury. The trial court properly exercised its discretion, and we find no error.

## MOTION IN LIMINE

Defendant contends that prior to commencement of the trial, the trial court erred in granting the State's motion in limine to preclude any expert testimony regarding whether the defendant was acting "reflectively or reflexively," "impulsively," "without premeditation," "fearfully," "intoxicated" or in any manner during the alleged criminal offenses.

The proper admission of expert testimony depends upon "whether the subject of inquiry is one of such common knowledge that people of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." *State v. Owens,* 112 Ariz. 223, 227, 540 P.2d 695, 699 (1975).

Expert witnesses testified on behalf of the defense as to defendant's impulsive personality and that defendant had a tendency to act without reflection. Such evidence assists the trier of fact in recognizing character traits of the particular defendant and is a proper subject of expert testimony. *State v. Christensen,* 129 Ariz. 32, 35, 628 P.2d 580, 583 (1981). Arizona law is clear, however, that "[s]uch testimony may only be used as evidence that the defendant pos-

sesses such a trait and it must be left to the jury to determine whether and how the trait affected the defendant's specific intent at the time of the alleged crime." *State v. Hicks,* 133 Ariz. at 71, 649 P.2d at 274; *State v. Christensen,* 129 Ariz. at 35–36, 628 P.2d at 583–84; *State v. Dickey,* 125 Ariz. 163, 169, 608 P.2d 302, 308 (1980).

Nevertheless, the defendant claims the trial court cannot properly limit testimony before the testimony is offered. We disagree. Ariz.R.Evid. 103(c) provides:

> In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.

The trial court limited the scope of the experts' testimony in order to comply with the dictates of *State v. Dickey, supra* and *State v. Christensen, supra,* and thus prevent "inadmissible evidence from being suggested to the jury." Accordingly, the trial court did not err in granting the State's motion in limine.

Finally, defendant argues that the language in the court's minute entry on this issue is "identical" to the language in the State's motion, thus indicating that the trial court merely acquiesced in the State's request and did not exercise sound discretion based on the applicable law and facts. We find this argument meritless. The record reflects extensive discussions prior to the ruling which granted the motion, thus refuting any claim that the trial judge failed to consider the law and the facts applicable to this issue. The record reflects the trial court's conscientious and reasoned application of clear legal precedent in this area. We find no abuse of discretion.

## IMPEACHMENT

Defendant's brother, Robert Hallman, testified in his behalf. During cross-examination of Hallman, the State introduced evidence of Hallman's failure to honor a subpoena issued at the State's request. The

State claimed the evidence was admissible for impeachment because it showed the witness' bias in appearing to testify for the defendant after failing to honor a State subpoena. Defense counsel objected at trial and claims on appeal that the introduction of this evidence was error. Defendant claims that the fact cannot show bias because at the time the witness failed to honor the State's subpoena, he was incarcerated and therefore unable to appear. Further, defendant argues, the only way to rehabilitate the witness would be to reveal the fact of the incarceration, which would place the defendant in a no-win situation.

A party against whom a witness is produced has a right to present evidence that may in the slightest degree affect the witness' credibility. *State v. Trotter,* 110 Ariz. 61, 65, 514 P.2d 1249, 1253 (1973); *State v. Young,* 109 Ariz. 221, 224, 508 P.2d 51, 54 (1973). As we stated in *State v. Ramos,* 108 Ariz. 36, 39, 492 P.2d 697, 700 (1972), "[t]he jury has a right to know any fact which tends to show a witness is biased, prejudiced or hostile in passing on that witness' credibility." The trial court has broad discretion in controlling cross-examination and a decision admitting certain matters for impeachment purposes will not be disturbed absent an abuse of that discretion. *State v. Ramos, supra; State v. Davis,* 117 Ariz. 5, 7, 570 P.2d 776, 778 (App. 1977).

Under the facts of this case, we find no error in the admission of the evidence. The fact that the witness testified for the defense but did not honor a subpoena to testify for the State could be considered evidence of bias. Further, the State properly limited the scope of cross-examination on this issue to the time period *after* the witness had been released from jail. The extent of the State's cross-examination of the witness about his absence was the following:

Q Mr. Hallman, you recall that before we recessed you were asked if you received a subpeona [sic] ordering you to appear before this Court on May 24, 1982 at 10:00 a.m., is that correct?

A Yes.

Q You were unavailable on May 24th at 10:00 a.m.?

A Yes.

Q You became available on that day at approximately 12:30 that afternoon, is that correct?

A Yes.

Q And you did not contact the Court pursuant to your subpeona [sic], did you?

A No.

Q And you didn't contact me pursuant to that subpeona [sic], did you?

A No.

The fact that this evidence placed defense counsel in an awkward position on rehabilitation is unfortunate, but does not affect the propriety of its admission in this case. We find no error.

## MOTION FOR A MISTRIAL

Defendant contends that a question asked and an argument made by the prosecutor denied him a fair trial and therefore the trial court's denial of a motion for a mistrial was an abuse of discretion.

In its rebuttal case, the State called a psychiatrist to refute defendant's claim that he was insane at the time of the crimes in question. This psychiatrist had been appointed by the court to examine the defendant to determine his ability to stand trial and his state of mind at the time of the offenses. During direct examination, the following exchange took place:

Q And Doctor, during [your interview with defense counsel], in response to some of your answers, I believe the defense attorney asked you a very interesting question, is that correct, *as to how could he defend this Defendant?*

A Yes, he did.

Q Would you explain to the jury that exchange?

MR. THOMPSON: Your Honor, are we talking about my conversation with this doctor? If so, I would object as irrelevant and hearsay.

MS. PARKER: Your Honor, the doctor has been subpoenaed and intereviewed [sic] by Mr. Thompson. *In response to some of the answers that he received from the doctor, I believe that Mr. Thompson indicated that there was no defense in this case.*

MR. THOMPSON: Your Honor, I would object. That's not what I stated to this doctor. Besides whatever my conversation with him [was] is hardly . . . relevant to the issues in this trial.

(Emphasis supplied.)

■ The trial court sustained the objection, but defendant claims that the question and argument were improper and in themselves sufficient to cause prejudice. In determining whether remarks made by counsel in a criminal case are so objectionable as to require a mistrial, the trial court should consider (1) whether the remarks called to the attention of the jurors matters that they would not be justified in considering in determining their verdict, and (2) the probability that the jurors, under the circumstances of the particular case, were influenced by the remarks. *See State v. Bailey,* 132 Ariz. 472, 478–79, 647 P.2d 170, 176–77 (1982); *State v. Gonzales,* 105 Ariz. 434, 437, 466 P.2d 388, 391 (1970); *State v. Reim,* 26 Ariz.App. 528, 532, 549 P.2d 1046, 1050 (1976). Misconduct alone will not cause a reversal, but only where the defendant has been denied a fair trial as a result of the actions of counsel. *State v. Sustaita,* 119 Ariz. 583, 592–93, 583 P.2d 239, 248–49 (1978); *State v. Moore,* 108 Ariz. 215, 222, 495 P.2d 445, 452 (1972). As we emphasized in *State v. Bailey, supra,* "particularly in capital cases, [we will] scrutinize county attorneys' remarks carefully," to determine if the defendant was denied a fair trial so that reversal is required. The decision to grant a mistrial is left to the sound discretion of the trial court and in the absence of a showing of abuse of that discretion, the trial court's decision will not be disturbed on appeal. *State v. Trotter,* 110 Ariz. at 65, 514 P.2d at 1253.

■ We do not believe the question asked by the prosecutor was so prejudicial as to require reversal. The question merely made reference to the defense counsel's inquiry of whether the expert believed the insanity defense or any other was applicable to this case. The jury was aware that this witness was appointed by the court to examine the defendant, so there could be no inference drawn that defense counsel was "witness shopping."

■ We have much more difficulty with this question, however, when read together with the subsequent argument made by the prosecutor that the defense counsel had told the witness that he believed there was no defense in this case. For ethical as well as legal reasons, an attorney should not imply to the jury that opposing counsel may not believe in the defense presented. *State v. Travis,* 26 Ariz.App. 24, 27, 545 P.2d 986, 989 (1976); Ariz.R.S.Ct. 29(a), DR 7–106(C)(2). The trial court properly sustained an objection to the entire exchange. Since the question and argument called the attention of the jury to matters that could not properly be considered in determining their verdict, the remaining issue is whether this matter probably influenced the jury. *State v. Bailey, supra.* In the circumstances of this case, we do not believe the trial court abused its discretion in refusing to grant a mistrial because of this isolated exchange. The trial court not only sustained defense counsel's objection but also admonished the jury not to consider the matter in their deliberations. In addition, the jury was instructed by the court that arguments of counsel were not evidence to be considered in reaching their verdicts. The error appears slight in light of defendant's case, which included three expert witnesses and extensive testimony covering three days of the trial. Finally, we acknowledge that in these situations the trial court is in the best position to view the error and determine any effects it may have had on the jury. Based on all of the foregoing, we cannot find that the trial court abused its discretion in denying the motion for a mistrial.

38

## MOTION FOR DIRECTED VERDICT

After the State's case, the defendant moved for a judgment of acquittal of the felony murder charge. Defendant argued that the evidence was not sufficient to support a verdict that the victim was killed "in furtherance" of defendant's attempted sexual assault. In support of this, the defendant argued that the victims of the two offenses were different and the crimes were committed in different areas of the house. Based on these facts, defendant claimed that no jury could conclude that the killing of Geyer was in furtherance of the subsequent attempted sexual assault of Meyers.

Under Ariz.R.Crim.P. 20, a judgment of acquittal prior to verdict may be entered only if there is no substantial evidence to warrant a conviction. *State v. Hunter,* 136 Ariz. 45, 48, 664 P.2d 195, 198 (1983). In order to avoid a directed verdict, the State must present evidence that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt. *State v. Edwards,* 136 Ariz. 177, 186, 665 P.2d 59, 68 (1983); *State v. Jimenez,* 130 Ariz. 138, 141, 634 P.2d 950, 953 (1981). A death is "in furtherance" of the underlying felony if the death resulted "from an action taken to facilitate the accomplishment of [the felony]." *State v. Arias,* 131 Ariz. 441, 443, 641 P.2d 1285, 1287 (1982). This is ordinarily a question to be determined by the trier of fact. *See State v. Jimenez, supra.*

In this case we believe there was substantial evidence to support the State's theory that Geyer was killed in furtherance of the attempted sexual assault on Meyers. Meyers testified that defendant had come into her bedroom and molested her around 3:00 a.m. on the morning of the murder. At about 6:00 a.m., while McMurtrey was leaving for work, Geyer woke up, said goodbye to McMurtrey and then fell back asleep. Defendant told one of the detectives that he was afraid Geyer would retaliate against him when Meyers told him about the molestation. Further, immediately after defendant shot Geyer, he went to Meyers' room

and told her he was going to rape her. From this evidence, the jurors could have concluded that defendant decided to rape Meyers, that he knew he would be in serious trouble with Geyer if he did this, so he killed Geyer and then tried to rape Meyers.

Accordingly, the trial court did not err in refusing to grant defendant's motion for a judgment of acquittal on the felony murder charge.

## CONSECUTIVE SENTENCES

Defendant's final contention is that the trial court erred by imposing consecutive sentences for the murder and attempted sexual assault.

First, defendant argues that the imposition of consecutive sentences violated A.R.S. § 13–116. This statute provides, in part:

An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent.

Since the jury returned a verdict of first degree murder without designating whether the murder was premeditated or in furtherance of the attempted sexual assault, defendant claims that the verdict must be resolved in favor of the "lesser degree" which he asserts is felony murder. A felony murder conviction, the argument continues, precludes consecutive sentencing for the underlying felony and therefore the sentence imposed was erroneous. We find no merit in defendant's argument. Felony murder is not a "lesser degree" of murder as compared with premeditated murder. Felony murder and premeditated murder are merely two forms of the same crime— first degree murder.

Further, we do not believe A.R.S. § 13–116 was violated by the consecutive nature of the sentences. This statute bars consecutive sentences for a single act which is made punishable in different ways. The statutory restriction applies if, after eliminating the elements of one charge, the remaining evidence will not support the ele-

ments of the additional charge. *State v. Rogowski,* 130 Ariz. 99, 101, 634 P.2d 387, 389 (1981); *State v. Gordon,* 125 Ariz. 425, 428, 610 P.2d 59, 62 (1980). In this case, there were clearly two separate acts affecting different victims. Eliminating the elements of attempted sexual assault, the remaining evidence supports the charge of first degree premeditated murder. A.R.S. § 13–116 does not prohibit consecutive sentences in this case.

■ Defendant also contends that the trial court violated A.R.S. § 13–708. This statute provides, in part:

> If multiple sentences of imprisonment are imposed on a person at the same time ... [the sentences] shall run concurrently unless the court expressly directs otherwise, in which case the court shall set forth on the record the reason for its sentence.

Finding the mitigating circumstances sufficiently substantial as to call for leniency, the trial court imposed a sentence of life imprisonment for the charge of first degree murder. With respect to the attempted sexual assault, the court found neither the aggravating nor mitigating circumstances outweighed each other and imposed the presumptive sentence of 7.5 years' imprisonment. Defendant argues that a decision to have these terms run consecutively is erroneous because it is inconsistent with the above findings relating to each crime. We do not agree.

The decision whether to impose a sentence of life imprisonment or death in a first degree murder case is governed by A.R.S. § 13–703. The decision to impose an aggravated, presumptive, or mitigated sentence for all other felonies is controlled by A.R.S. § 13–702. While the length of a sentence and the decision to impose consecutive terms may well be influenced by similar factors, A.R.S. § 13–708 does not restrict the trial judge's analysis on the issue of consecutive or concurrent sentences to the factors listed in § 13–702 or –703.

Where the imposition of consecutive sentences is permissible,[1] A.R.S. § 13–708 requires only that the trial court set forth on the record its reasons for doing so.

In this case, the trial court fully stated its reasons for imposing consecutive sentences. Among the reasons were that two victims were involved, a separate crime was committed on each victim and society deserved protection from these actions. The trial court properly complied with the requirements of A.R.S. § 13–708. *See State v. Frederick,* 129 Ariz. 269, 272–73, 630 P.2d 565, 568–69 (App.1981). We find no error.

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035 and find none.

Accordingly, the judgments of conviction and the sentences imposed are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

1. For example, where A.R.S. § 13–116 does not prohibit the imposition of consecutive sen-

tences.