NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CARLOS ISRAEL MENDEZ, *Appellant*.

No. 1 CA-CR 18-0099
FILED 3-5-2019

Appeal from the Superior Court in Maricopa County
No. CR2016-121555-001
The Honorable Annielaurie Van Wie, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jennifer M. Perkins joined.

J O H N S E N, Judge:

**¶1**　　　　Carlos Israel Mendez appeals his convictions of two charges of aggravated driving while under the influence ("DUI") while having a suspended or revoked driver license.  Mendez argues the superior court erred by permitting the State to impeach his witness using the witness's attempted forgery conviction and by failing to declare a mistrial after the State published an exhibit listing Mendez's prior DUI conviction.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　Police arrested Mendez after he fled from a car crash. Evidence showed Mendez had a blood alcohol concentration ("BAC") of at least .17 while driving, which is above the legal limit, *see* Ariz. Rev. Stat. ("A.R.S.") § 28-1381(A)(2) (2019) (DUI violation if BAC of .08 or more), and that his driver license was revoked.[1]  The State charged Mendez with two counts of aggravated DUI while having a suspended or revoked license, each a Class 4 felony.  A.R.S. § 28-1383(A)(1), (O)(1) (2019).[2]  The superior court held a seven-day trial and heard testimony from four police officers, a forensic scientist, a custodian of records from the Motor Vehicle Division, Mendez and Mendez's co-worker, D.C.

**¶3**　　　　The central issue at trial was whether Mendez was the driver. A police officer testified he saw a speeding car go by him.  According to the officer, the car carried no passengers, only the driver.  The officer began following the car and caught up to it only after it crashed.  The officer saw

---

[1]　　　　Absent material revision after the date of an alleged offense, we cite the current version of a statute or rule.

[2]　　　　The State alleged Mendez committed § 28-1383(A)(1)'s predicate DUI offense in two ways: First, his BAC was above .08, and second, he drove while "impaired to the slighted degree" due to intoxicating liquor. *See* A.R.S. § 28-1381(A)(1) & (2).

one man run away and no one else nearby. Police eventually arrested the fleeing man, Mendez.

¶4 Mendez and D.C., however, testified D.C. had offered to drive Mendez home after the two ran into each other at a bar. They said that while D.C. was driving, the car's tire blew out and caused the crash. By their accounts, both of them then fled: Mendez jumped a wall and then lay down on some grass, where police eventually found him; D.C. went in the opposite direction and, "in less than 10 minutes," left the area using a ride-sharing service.

¶5 The jury found Mendez guilty on both counts, and the superior court sentenced him to concurrent terms of nine years in prison. Mendez timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2019), 13-4031 (2019) and -4033(A)(1) (2019).

## DISCUSSION

### A. Impeachment of D.C. Using His Attempted Forgery Conviction.

¶6 Mendez first argues the superior court erred when it permitted the State, under Arizona Rule of Evidence 609(a)(2), to impeach D.C. with an attempted forgery conviction. During the trial, the State gave notice of its intent to impeach D.C. with evidence he was convicted in Nevada of attempted forgery. Over Mendez's objection, the court found the conviction established D.C. had committed a dishonest act or a false statement. The State then used the conviction during its cross examination of D.C., and D.C. admitted he had been convicted of "[a]ttempted forgery."

¶7 Rule 609(a)(2) states:

> [F]or any crime regardless of the punishment, [a witness's prior conviction] must be admitted if the court can readily determine that establishing the elements of the crime required proving – or the witness's admitting – a dishonest act or false statement.

Under the rule, "whether a prior conviction is admissible for impeachment purposes . . . depends on the statutory language of the underlying offense and whether the conviction required proof of a dishonest act or false statement." *State v. Winegardner*, 243 Ariz. 482, 486, ¶ 13 (2018). The phrase "'dishonest act or false statement' should be construed narrowly to include only those crimes that involve deceit, untruthfulness, or falsification." *Id.* at

486, ¶ 12. The party seeking admission of the prior conviction bears the burden of showing the conviction is admissible. *See id.* at 487, ¶ 20. We review the superior court's admission of evidence for abuse of discretion, but review the interpretation of court rules *de novo* and apply principles of statutory construction when doing so. *Id.* at 484, ¶ 5.

¶8 D.C. was convicted under Nevada Revised Statutes § 205.090 (2019), which states:

> A person who falsely makes, alters, forges or counterfeits [any of several listed records] or counterfeits or forges the seal or handwriting of another with the intent to damage or defraud [any entity] or utters, publishes, passes or attempts to pass . . . any of the above-named false, altered, forged or counterfeited [records] . . . knowing it to be false, altered, forged or counterfeited with the intent to prejudice, damage or defraud [any entity] is guilty of forgery.

¶9 Mendez argues the conviction did not fall within Rule 609(a)(2) because the referenced Nevada statute does not require proof the defendant acted with "deceit, untruthfulness, or falsification," but allows a conviction based on a defendant's mere "broader intent of damag[e] or prejudic[e]." This argument, however, disregards that the statute requires proof the defendant "falsely ma[de], alter[ed], forge[d] or counterfeit[ed]" a record, or knowingly "utter[ed], publish[ed], [or] pass[ed]" such a record. Nev. Rev. Stat. § 205.090. These acts are acts of falsification, i.e., a "false statement" within the meaning of Rule 609(a)(2), which Mendez does not dispute.

¶10 Rule 609(a)(2) requires admission of a conviction whose elements require proof of a "false statement." Because the Nevada statute requires such proof, the superior court did not err by allowing the State to impeach D.C. with the conviction.

## B. Publication of Mendez's Driving Record Showing His Prior DUI.

¶11 On the first day of testimony, the jury submitted two questions regarding the basis for Mendez's license revocation. The court did not ask the questions of the witness, but instead, told the jury that it needed to determine only whether Mendez's license was suspended or revoked, and that the jury "cannot consider [the basis for the suspension or revocation] in any way because it simply isn't relevant." Later, the State published on a courtroom screen a version of Mendez's driving record that

showed he had a prior DUI conviction. The jury was able to see the record for roughly 90 seconds before the State took it off the screen.

¶12 Mendez moved for a mistrial, but the superior court denied his motion. The court reasoned that it already had admonished the jury not to concern itself with why Mendez's license had been revoked, and it warned the jury again that it "may not consider [the basis of the suspension or revocation] for any purpose whatsoever," and confirmed that the jury understood the command. The court also ordered the parties to replace the exhibit with a redacted version, and included the following limiting instruction in its final instructions to the jury:

> Any evidence of conviction for driving on a suspended license is relevant and may only be considered for the specific purpose of determining what the defendant knew or should have known of a license suspension or revocation. It is irrelevant and must not be considered with regard to any other element.

¶13 Mendez argues the superior court erred when it denied his motion for mistrial. A declaration of mistrial is "the most dramatic remedy for trial error," *State v. Lamar*, 205 Ariz. 431, 439, ¶ 40 (2003) (quotation omitted), and the superior court should grant a mistrial only when a trial error denies the defendant a fair trial, *State v. Hallman*, 137 Ariz. 31, 37 (1983). In determining whether to grant a mistrial, the court must consider: "(1) whether the [error] called to the jurors' attention matters that they would not be justified in considering in reaching their verdict and (2) the probability under the circumstances of the case that the [error] influenced the jurors." *Lamar*, 205 Ariz. at 439, ¶ 40; *see also Hallman*, 137 Ariz. at 37. We review a court's decision to deny a motion for mistrial for an abuse of discretion. *See Hallman*, 137 Ariz. at 37.

¶14 The superior court did not abuse its discretion in denying Mendez's motion. First, despite Mendez's argument to the contrary, the applicable test is the same regardless whether the improper evidence is brought up by the prosecutor or by a witness. *Compare Lamar*, 205 Ariz. at 438-39, ¶¶ 38, 40, *with Hallman*, 137 Ariz. at 36-37 (both cases apply the same test, even though the error in *Lamar* involved a witness's statement and *Hallman* involved a prosecutor's comment).

¶15 Applying that test, the record supports the superior court's decision to deny the motion. Although there is no dispute on appeal that publication of Mendez's driving record "called to the jurors' attention [a]

matter[] that they would not be justified in considering in reaching their verdict," *see Lamar*, 205 Ariz. at 439, ¶ 40, the court did not abuse its discretion in concluding the error did not influence the jury. The jury was allowed to view the record only for a brief time. Moreover, the court twice during trial told the jury not to consider the basis for the revocation of Mendez's license, and then included in its final instructions a limiting instruction to the same effect. *Id*. at 439, ¶ 43 (use of limiting instruction to minimize resulting prejudice).

**¶16**        Mendez argues the court's instructions were ineffective because, three days after the driving record was shown on the screen, the jury submitted a third question regarding whether Mendez was "ever tried for DWI before." But this question did not show Mendez was prejudiced by the State's publication of the improper record. In fact, while the question showed that a juror remained interested in the issue, it arguably showed that the jury did not notice Mendez's prior DUI conviction on the offending exhibit.

## CONCLUSION

**¶17**        For the foregoing reasons, we affirm Mendez's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA