705 P.2d 466

The STATE of Arizona, Appellee,

v.

Zsanet HANSEN, Appellant.

No. 2 CA–CR 3528.

Court of Appeals of Arizona,
Division 2.

March 12, 1985.

Review Denied Aug. 20, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Gerald R. Grant, Phoenix, for appellee.

Wallace R. Hoggatt, Douglas, for appellant.

## OPINION

BIRDSALL, Chief Judge.

This appeal is from a conviction of second degree murder entered pursuant to a plea agreement which reduced the charge from first degree. The appellant was given the maximum aggravated sentence of 21 years' imprisonment. For several reasons we must reverse.

The questions presented on appeal concern the court's failure to appoint new counsel to represent the appellant, failure to advise the appellant about a special condition pertaining to her sentence, and failure to provide an interpreter. Our own review of the record has also disclosed an error in the procedure for determination of the appellant's competency and a serious question concerning her understanding of all the plea proceedings.

Insofar as relevant, we discuss the facts of the substantive offense in our discussion of the issues. However, the following review of the record in the trial court is necessary to an understanding of the issues.

The appellant was indicted on September 9, 1983. Prior to that date, attorney Gary Ramaeker of Sierra Vista had been appointed to represent her. She was arraigned on September 19 in the Cochise County Superior Court. Mr. Ramaeker informed the court at that time that he did not believe she understood the English language well enough to respond, that she spoke several other languages, and that her strongest appeared to be German. Attorney Ramaeker had secured a German interpreter and she was sworn to interpret. However, from our understanding of the record, the interpreter did not translate all of the proceedings but rather only interpreted particular questions or other matters when asked to do so by counsel or the

court. This same problem appears in other hearings where an interpreter was present.

At the arraignment the court granted the appellant's motion for a Rule 11 [1] examination. According to the written motion, the purpose of the examination was both to determine competency and to investigate her mental condition at the time of the offense. The notice of appointment did not, however, request the latter investigation. Since the motion was granted, the trial court found reasonable grounds for such an examination. Contrary to the requirement of Rule 11.3(a) that at least two mental health experts be appointed, only one psychiatrist was appointed. Subsequently, on the basis of only that one report, the trial court found the appellant competent. There was never any objection to this procedure.

The next hearing was held October 3. The interpreter was not present. Mr. Ramaeker advised the court that "we've" concluded the appellant knows and understands English probably better than German. As a result, the hearing was conducted without an interpreter. At that hearing the court also granted the appellant's motion to have an associate of Mr. Ramaeker's, John Kelliher, appointed as additional counsel for the appellant.

The appellant was also present without an interpreter at the next hearing, October 17. The motions presented involved disclosure, modification of conditions of release (the appellant was always in custody), and the filing of an addendum to the indictment alleging the dangerous nature of the offense.

At the next hearing, the Rule 11 motion was submitted on the report of the psychiatrist and the court found the appellant competent. Another brief hearing was held concerning the appointment of a medical doctor to examine the appellant for neurological and hearing complaints, and the trial was set for January 10, 1984.

1. Unless otherwise indicated, all references to Rules are to the Rules of Criminal Procedure, 17 A.R.S.

On January 16, trial having been continued, the court was presented a plea agreement signed January 13 in which the appellant agreed to plead guilty to second degree murder. Again, no interpreter was present. The court examined the appellant concerning the agreement, and she responded with "yes" answers to several questions, thus indicating her understanding of the agreement until the following exchange:

"THE COURT: Now, as your lawyers have explained to you, do you understand that by pleading guilty you give up the following constitutional rights? You give up the right to keep your plea of guilty [sic] and have a trial by jury at which you would be represented by counsel. Do you understand that you give up that right?

"THE DEFENDANT HANSEN: What that mean? I don't understand.

"MR. KELLIHER: We went over that Friday. We're not going to have a jury trial now, right here.

"THE COURT: Do you understand that?

"THE DEFENDANT HANSEN: (No Response)

"THE COURT: Well, in other words, when you plead guilty, you give up the right to have a trial at which the evidence is produced and the jury decides the case. You give up that right; do you understand that?

"THE DEFENDANT HANSEN: I don't remember what happened to us.

"THE COURT: No. I'm not asking you that. But just by pleading guilty, you give up the right to a jury trial; do you understand that?

"THE DEFENDANT HANSEN: Yeah.

"THE COURT: You don't get a trial if you plead guilty; do you understand that?

"MR. KELLIHER: I explained this.

"THE DEFENDANT HANSEN: I don't understand what that means.

"MR. KELLIHER: I explained it to her Friday, before having her sign this, Your Honor, and she at that time did not know what a jury trial was. I attempted the best I could to explain to her what a jury trial was. I don't know, without her background in American History and Constitutional Law and so forth, that she would ever understand what a jury trial is any better than I could explain it to her.

"THE COURT: Well, of course if she can't understand what it is, how can she waive it?

"MR. KELLIHER: I don't know, without going to at least a high school-level education, that she would ever understand that.

"THE COURT: Well, how many years in school did you have, Miss Hansen?

"THE DEFENDANT HANSEN: Pardon me?

"THE COURT: How many years in school did you have?

"THE DEFENDANT HANSEN: How many what?

"MR. KELLIHER: How many years did you go to school? In Germany; how many years of school?

"THE DEFENDANT HANSEN: I don't know.

"MR. KELLIHER: You went to school in Yugoslavia?

"THE DEFENDANT HANSEN: I don't understand what you mean.

"MR. KELLIHER: School; do you know what school is? Teachers?

"THE DEFENDANT HANSEN: Yeah.

"MR. KELLIHER: Did you go to school like, you know, your daughter goes to school? Did you do that when you were younger?

"THE DEFENDANT HANSEN: I went one or two. I think only one and two. I don't know.

"MR. KELLIHER: But that's a different system there from what they have here; right?

"THE DEFENDANT HANSEN: I can't hear.

"MR. KELLIHER: Does your other ear work better?

"THE COURT: Well, Miss Hansen, I feel that I have to—are you able to understand English?

"THE DEFENDANT HANSEN: Yeah.

"THE COURT: You can understand English.

"MR. KELLIHER: I don't think it's her comprehension of the English language that's lacking. It is just her comprehension of the system and the terms that define the system that are bewildering her.

"MRS. WARD: Your Honor, I do have an interpreter, a Serbian-speaking individual, who has spoken with Miss Hansen before, that could be up here in court within ten minutes, if you would perhaps feel more comfortable proceeding with an interpreter, even though the defendant earlier denied her need for an interpreter. We could provide that.

"THE COURT: Miss Hansen, what is the language in which you can understand and speak the best?

"THE DEFENDANT HANSEN: I have to tell him what happened?

"MR. KELLIHER: No. What language do you feel most comfortable with? German? Yugoslavian?

"THE DEFENDANT HANSEN: No.

"MR. KELLIHER: Hungarian? Which language do you speak best?

"THE DEFENDANT HANSEN: Okay.

"MR. KELLIHER: What do you feel most comfortable?

"THE DEFENDANT HANSEN: I don't understand what you're talking about.

"MR. KELLIHER: Don't worry about this right now (indicating the plea agreement). Which language to [sic] you feel most comfortable with?

"THE DEFENDANT HANSEN: Yeah.

"MR. KELLIHER: Which one? Which one?

"THE DEFENDANT HANSEN: Well, I don't know.

"MR. KELLIHER: Hungarian, Yugoslavian?

"THE DEFENDANT HANSEN: Pardon me?

"MR. KELLIHER: Which language do you feel most comfortable with? Not German though; is it?

"THE DEFENDANT HANSEN: I don't know.

"MR. KELLIHER: Which language do you speak best?

"THE DEFENDANT HANSEN: Well—

"MR. KELLIHER: How many languages do you speak? How many languages do you speak? You speak English; right?

"THE DEFENDANT HANSEN: Uh-huh.

"MR. KELLIHER: You speak German? Do you speak French?

"THE DEFENDANT HANSEN: How many language?

"MR. KELLIHER: Uh-huh.

"THE DEFENDANT HANSEN: I speak —Oh, I don't understand, because of my ears.

"MR. KELLIHER: That's all right.

"THE DEFENDANT HANSEN: I speak seven languages. But French, I forgot it because I grew up on (sic) my mom, you know. So I born in Hungary, but I have French citizenship. And I was a little—when I was a little and when I go back to my mom and I lost again, and I got married to French guy, then I get again French citizenship. So I grew up in Yugoslavia.

"MR. KELLIHER: What language do you feel most comfortable with?

"THE DEFENDANT HANSEN: Any language, you know. I can talk in German, Hungary, Yugoslav, French, and a little bit Swedish, a little bit Hawaiian.

"MR. KELLIHER: Can you understand English?

"THE DEFENDANT HANSEN: Well, the best language I understand, German and Hungarian and you know. That's all I can better to talk, you know. English I have to learn. And I just learned English 11 months, but I still not understand all.

So I got grammar book here and they take it away from me because they didn't like me to learn. I don't know why.

"MR. KELLIHER: Well, have you understood the questions that I have been asking you?

"THE DEFENDANT HANSEN: Those other languages, when I know it, I learn it by my school in Germany.

"MR. KELLIHER: But my question was—now listen. Do you understand the questions?

"THE DEFENDANT HANSEN: How many school?

"MR. KELLIHER: No. Do you understand the questions I have been asking you before? Did you understand those questions?

"THE DEFENDANT HANSEN: I don't understand what he means.

"MR. KELLIHER: The questions we went over earlier on these papers, did you understand those? Remember I explained them to you Friday? He asked you the same questions I told you that he would ask; did you understand them?

"THE DEFENDANT HANSEN: Not all of those (indicating).

"MR. KELLIHER: Up to this point though have you understood everything?

"THE DEFENDANT HANSEN: I understand when you read me, yeah.

"MR. KELLIHER: Yes.

"THE DEFENDANT HANSEN: But when I read, I don't know all of them. I read, yes, but—

"MR. KELLIHER: She cannot read it herself.

"MR. RAMAEKER: May I, Your Honor?

"THE COURT: Yes.

"MR. RAMAEKER: Excuse me. Have you understood what the judge has been asking you about up to this point?

"THE DEFENDANT HANSEN: Yeah."

After a few additional questions the trial court concluded that the appellant did not understand what was going on. The judge suggested that perhaps the proposed new interpreter and defense counsel could explain the agreement to her, and it might still be possible to accept the plea. The hearing adjourned on that note.

Despite the difficulties demonstrated at the January 16 hearing, the matter was back before the court three days later with the same plea agreement, but a different interpreter using the Slav language. The new interpreter had spent two hours going over the agreement with defense counsel and the appellant and, in response to the court's inquiry as to whether she was able to communicate with the appellant, said:

"THE INTERPRETER: Yes, I think so. She claims there was some—there was some maybe parts that she didn't understand; merely that she thought I spoke too fast. However, I feel like she did understand a lot that I did interpret for her."

The hearing then continued using the interpreter who indicated, although most of the time not in the first person, satisfactory one word answers to the court's questions. When it came to the matter of a factual basis, Mr. Kelliher gave the following narrative.

"MR. KELLIHER: Yes, sir.

On or about August 28th, 1983, early in the Sunday morning hours, a fight of some sort broke out between the victim, Rory Cochise Cody, and the defendant, Zsanet Hansen. A scuffle of some sort took place and the defendant wound up with a handgun in her possession, a .22 caliber pistol. The handgun was discharged six times. The defendant shot the victim, Mr. Cody, three times, twice superficially and once the fatal wound, killing him some time that morning of the 28th."

The interpreter translated only part of this question when the appellant again had difficulty. We quote again from the transcript:

"THE DEFENDANT: I don't know what I did. I was told by the police.

THE INTERPRETER: She was drunk.

THE DEFENDANT: I was drunk.

MR. KELLIHER: But she did. Tell her that's what she told the police too.

THE DEFENDANT: I told the police that I had done something, but I didn't know what I did.

THE INTERPRETER: And she said: He gave me the drink and I drank because he made me drink it. And he beat her.

THE COURT: Does she remember shooting him?

THE INTERPRETER: She says: I know that I did something, but I don't know what I did because I was under the influence.

THE COURT: Does she remember?

THE DEFENDANT: That's why I went to the police, to tell them I did something. But at the time I didn't know what I did.

THE COURT: Does she remember having a gun in her hand and pulling the trigger?

THE INTERPRETER: Originally the gun was in Mr. Cody's hand. However, the little girl was in the room with them and he hit the little girl with the gun and they scuffled over the gun. It fell to the floor and he picked it up and she feels at that time she must have shot him, although she still contends she doesn't remember, that she was under the influence."

After this the court concluded, "Well, I think there's enough there," and found that the appellant knowingly, intelligently, and voluntarily entered a plea of guilty and that there was a factual basis. A sentencing date was set. The guilty plea proceeding form, which was written in English, was also signed by the appellant without in-court translation.

On February 27 the case was again before the court in a most extraordinary proceeding. The Slav interpreter was present with the appellant but not interpreting the proceedings for her. Mr. Kelliher notified the court that the appellant had accused him of "fooling her into entering the plea agreement" and that he could no longer represent her and have "her best interests at heart." Although the court agreed with Kelliher, it ruled that Mr. Ramaeker should continue to represent the appellant. At the conclusion of the hearing the court directed the interpreter to communicate what had taken place to the appellant.

On March 9 the court commenced what was intended to be a "presentence hearing." However, Mr. Ramaeker immediately reminded the court that there was a question concerning the plea and that the court might want to reconsider accepting the plea. Although agreeing that it was appropriate for the court to hear the appellant's position in that regard, Ramaeker questioned whether he was in a position to properly examine her. However, the court disagreed and Ramaeker was obliged to call the appellant. Thus he was in the conflicting position of attempting to represent appellant while at the same time upholding the actions of his associate and himself. The resulting examination of the appellant by her counsel and the county attorney, while finally accepted by the trial court as sufficient to allow the plea to stand, was at best questionable and certainly did not afford the appellant the independent legal assistance to which she was entitled. In addition, the same problems we have previously noted with regard to interpretation, i.e., some of the proceedings not interpreted, use of the second person, and paraphrasing of her answers by the interpreter, are apparent. Sentencing occurred on March 19, and although the Slav interpreter was present, she was not used.

■ Turning now to the issues presented by appellant's appellate counsel, we agree that reversible error has been shown. When the court was advised that the appellant was claiming that counsel had fooled her into signing the plea agreement, new counsel should have been appointed to represent her. Mr. Ramaeker stood in the same position as his co-counsel and law associate, and it was error to either require or permit him to continue to represent the appellant. Rule 29(a), DR 5–105(D), Rules of the Supreme Court, 17A A.R.S. (Re-

pealed effective February 1, 1985; see now Rule 42, ER 1.10); see *Rodriguez v. State*, 129 Ariz. 67, 628 P.2d 950 (1981).

■■ At the first change of plea proceeding, the trial court asked the appellant if she understood she would have to serve two-thirds of the seven-year minimum sentence if that was the sentence. The appellant without an interpreter answered: "Yeah." That plea was rejected, and this special sentencing condition was never mentioned again in any subsequent hearings. It was not in the written plea agreement. We do not believe, at least in this case, that there was sufficient compliance with Rule 17.2:

> "Before accepting a plea of guilty or no contest, the court shall address the defendant personally in open court, informing him of and determining that he understands the following:
>
> \* \* \* \* \* \*
>
> b. The nature and range of possible sentence for the offense to which the plea is offered, including any special conditions regarding sentence, parole, or commutation imposed by statute;"

The requirement that a defendant convicted of a dangerous nature Class 2 or 3 felony must serve at least two-thirds of the sentence imposed is contained in A.R.S. § 13–604(G) (Supp.1984) and is a special condition regarding sentence, parole, or commutation. See *State v. Levario*, 118 Ariz. 426, 577 P.2d 712 (1978) (discussing former A.R.S. § 36–1002.02, ineligibility for parole or other release for 5 years). And see *State v. Lamas*, 143 Ariz. 564, 694 P.2d 1178 (1985). This was again reversible error, or at least cause for remand to determine whether the appellant understood the special condition.

■ Finally, the appellant contends on appeal that she was not provided a competent interpreter at all crucial stages of the trial proceedings. We agree. Although an interpreter was provided at times for the purpose of translating questions asked of the appellant and interpreting her answers, it appears that the interpreter never simultaneously translated the proceedings for the appellant. At least for the crucial hearings, which would surely include the sentencing, this is necessary. *State v. Rios*, 112 Ariz. 143, 539 P.2d 900 (1975); *State v. Natividad*, 111 Ariz. 191, 526 P.2d 730 (1974). Nor can we find any waiver of this right to participate effectively in the proceedings by means of the interpreter. *Natividad*, supra. We fully recognize that there is some indication that the appellant possessed some understanding of English and that the trial court is in the best position to determine whether a defendant is able to proceed without an interpreter. However, the record is, at best, ambiguous in this regard. We believe the entire record shows that the interpretation afforded the appellant was so inadequate that she was deprived of due process of law.

■ In addition to these issues raised by the appellant, it was error for the trial court to appoint only one mental health expert for the Rule 11 examination. This is not a case in which the expert was appointed to express an opinion as to whether reasonable grounds for Rule 11 proceedings existed. That had been determined. This was an examination for competency, and perhaps mental condition at the time of the offense. Although there was no objection, we do not believe we can say in this case that the error was waived. The medical doctor subsequently appointed was for diagnosis of medical, not mental, problems. If Rule 11 proceedings are again granted in the trial court, two experts must be appointed.

We also express our opinion based on our review of the entire record that the finding that the appellant's plea was made knowingly and intelligently was not supported by the evidence before the trial court.

We reverse for further proceedings consistent herewith.

HOWARD and HATHAWAY, JJ., concurs.