751 P.2d 951

**STATE of Arizona, Appellee,**

v.

**Zsanet HANSEN, Appellant.**

No. 6625–2.

Supreme Court of Arizona.

Feb. 25, 1988.

**292**

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Gerald R. Grant, Bruce M. Ferg, Asst. Attys. Gen., Phoenix, for appellee.

Perry L. Hicks, Cochise County Public Defender, Bisbee, for appellant.

GORDON, Chief Justice.

Appellant Zsanet Hansen was convicted by a jury of one count of first-degree murder. Having determined that there were insufficient mitigating or aggravating circumstances to affect its decision pursuant to A.R.S. § 13-703, the trial court sentenced Hansen to life imprisonment without the possibility of release for twenty-five years. Hansen challenges her conviction on the following grounds:

(1) the trial court abused its discretion in denying her motion to dismiss because of lost evidence;

(2) the trial court abused its discretion in denying her request for a *Willits* [1] instruction;

---

1. *State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964) (if the state destroys or misplaces evidence, the contents of which are in issue, the defendant is entitled to request an instruction that the jury is to infer that the true facts, with

(3) the trial court abused its discretion in denying her request for a new trial;

(4) the trial court abused its discretion in denying her request for the appointment of a neurologist; and

(5) the prosecutor's misconduct warrants the granting of a new trial.

We have jurisdiction pursuant to Arizona Constitution article 6, section 5(3) and A.R.S. sections 13–4031, –4033, and –4035.

## FACTS

Sometime in the afternoon of August 29, 1983, Hansen and her young daughter, Jenny, entered the lobby of the police station in Bisbee, Arizona. Hansen told Police Sergeant Ken Shutley that she and her boyfriend, Rory Cody, had fought the day before, and that she wanted to remove her belongings from his home. Sergeant Shutley asked Hansen if she had previously reported the incident. When Hansen indicated she had not contacted the police, Shutley began questioning her concerning the altercation. In response to Shutley's questions, Hansen claimed that Cody had struck Jenny in the back of the head, causing a lump to form. Moreover, Hansen stated that Cody had been brandishing a weapon during the altercation. Shutley then asked if anyone had been shot or if the weapon had been fired. Initially, Hansen indicated that the pistol had not been fired, but when Shutley asked again whether anyone had been injured, Hansen stated that she thought Cody had been injured. Shutley then ascertained Cody's address and terminated the interview.

Shutley, Sergeant Mary Gojhovick, and another officer went to Cody's residence. They found Cody's body in the living room, lying in a pool of blood. Cody had been shot three times, with bullets penetrating his back, arm, and chest. None of the wounds were self-inflicted, and Cody appeared to have been in a defensive position when shot. In fact, Jenny later testified that Hansen and Cody were arguing on the morning of August 28, 1983, and, when Cody turned to leave the room, Hansen pulled a gun out of her purse and shot at him.

After returning to the station, Sergeant Gojhovick read Hansen her *Miranda* warnings and questioned her concerning Cody's death. During the interrogation, Hansen stated that on August 28, 1983, Cody had become angry at Jenny for answering the phone and had struck Jenny in the head with a pistol. She claimed that at some point in time Cody shot himself in the arm and, although she did not remember how it happened, that she eventually shot Cody. After the shooting, Hansen claimed that she passed out and did not wake up until the following day. When she awoke and realized what had happened, Hansen went to the police station.

On September 9, 1983, the Cochise County Grand Jury returned an indictment charging Hansen with first-degree murder. Hansen agreed to plead guilty to second-degree murder.[2] The trial court accepted the plea and sentenced Hansen to prison for a term of 21 years. A judgment was entered pursuant to this agreement. Hansen then appealed from the judgment of guilt and sentence imposed. On March 12, 1985, the Arizona Court of Appeals reversed Hansen's conviction.[3]

respect to the missing evidence, are against the interest of the state).

2. It is important to note that the plea agreement was entered into during pretrial proceedings. Because no jury was impaneled and no witness was sworn, this case does not present a double jeopardy issue. *See* U.S. Const. amend. V; Ariz. Const. art. II, § 4; *McLaughlin v. Fahringer,* 150 Ariz. 274, 723 P.2d 92 (1986); *State v. Elias,* 111 Ariz. 195, 526 P.2d 734 (1974).

3. In *State v. Hansen,* 146 Ariz. 226, 705 P.2d 466 (App.1985), Hansen's conviction and sentence were reversed for several reasons. Chief among them was that Hansen did not receive simultaneous translation of the dialogue taking place during crucial stages of her proceedings, particularly the sentencing hearing. Hansen was born in Hungary, and, although she speaks some English, she is truly fluent only in German and Hungarian. The court of appeals found that the interpreter services afforded Hansen were so inadequate that she was deprived of due process of law. 146 Ariz. at 232, 705 P.2d at 472.

On remand, a jury found Hansen guilty of first-degree murder. The trial court then sentenced appellant to life imprisonment.

## DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING HANSEN'S MOTION TO DISMISS BECAUSE OF LOST EVIDENCE

Hansen argues that due process requires the state to provide the defense access to certain kinds of evidence. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Moreover, Hansen maintains that this right of access includes the duty to preserve potentially exculpatory evidence. *State v. Hannah,* 120 Ariz. 1, 583 P.2d 888 (1978). In the instant case, Hansen suggests that, by failing to take fingernail clippings and scrapings from Cody's hands and misplacing photographs of the crime scene and autopsy, the state breached its duty.

■ As a general proposition, where evidence has been lost or destroyed, a conviction should be reversed if (1) there is bad faith on the part of the state, or (2) a defendant was prejudiced by the loss of evidence. *Id.* at 2, 583 P.2d at 889; *State v. Maldonado,* 138 Ariz. 475, 477, 675 P.2d 735, 737 (App.1983). Hansen raises no claim of bad faith, so we need determine only whether the loss of evidence was prejudicial.

Hansen notes that she told police the altercation began when Cody fired the murder weapon. She then points out that testimony introduced at her trial indicated that there was an oily substance on the barrel and cylinder of the weapon. Hansen therefore argues that, had Cody fired the weapon, there would almost certainly have been gun oil on his hands or underneath his fingernails. Additionally, Hansen suggests that an examination of Cody's hands, fingers, and fingernails would have indicated whether there was a struggle. Hansen concludes that both evidence of gun oil on Cody's hands and fingers and evidence of a struggle were crucial to her claims of self-defense and defense of her child, and its loss was highly prejudicial to her defense.

With respect to the photographs, Hansen argues that the missing autopsy photographs would have indicated the angle of the bullets' entry into Cody's body. Additionally, Hansen suggests the missing photographs of the crime scene would have helped establish her position when the shots were fired. Hansen also maintains such photographs would have revealed whether there was a physical struggle. Accordingly, Hansen argues that the missing evidence was vital to her self-defense and defense-of-others theories, and, again, that its loss was highly prejudicial.

■ We begin our analysis by noting that the decision of whether to grant a defendant's motion for dismissal is within the sound discretion of the trial court. Absent an abuse of discretion, this Court will not disturb the denial of a motion to dismiss. *See State v. Pickett,* 121 Ariz. 142, 145, 589 P.2d 16, 19 (1978).

■ It is true that the photographs of the crime scene and autopsy taken by Sergeant Gojkovich were misplaced and unavailable at Hansen's trial. However, the medical examiner also took photographs at the scene and at the autopsy, and these photographs were available at trial. Moreover, Sergeant Gojkovich testified that the photographs taken by the medical examiner depicted substantially the same subjects as the lost photographs. Because these photographs were available to Hansen prior to trial, the loss of Sergeant Gojkovich's photographs did not prejudice appellant.

■ With respect to the failure to take fingernail clippings and scrapings, the medical examiner, Dr. Guery Flores, testified that Cody was a "chronic nail-biter" whose fingernails were chewed down past the quick, leaving no fingernails to clip and nothing to scrape. Dr. Flores testified further that he examined Cody's fingernails with a magnifying glass and found no hairs, fibers, or other foreign matter. Moreover, Dr. Flores also examined Cody's hands and fingers with a magnifying glass, and Dr. Flores testified that he did not observe excessive amounts of oil on Cody's hands and fingers.

On the basis of the record before this court, we find no reasonable possibility that Hansen has suffered prejudice. We therefore find that the trial court did not abuse its discretion in denying Hansen's motion to dismiss.

## DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING HANSEN'S REQUEST FOR A *WILLITS* INSTRUCTION?

Items of evidence are occasionally lost or destroyed before examination. When this occurs, defendants are unable to determine whether this evidence would have been helpful in their defense. As one method for overcoming this problem and ensuring a fair trial, Arizona courts utilize a *Willits* instruction. That instruction states:

> If you find that the state has destroyed, caused to be destroyed, or allowed to be destroyed any evidence whose contents or quality are in issue, you may infer that the true fact is against the interest of the state.

*See State v. Willits*, 96 Ariz. 184, 187, 393 P.2d 274, 276 (1964).

■ Hansen argues that the trial court erred in refusing her request for a *Willits* instruction. A defendant is entitled to a *Willits* instruction upon proof that (1) the state failed to preserve material evidence that was accessible and might have tended to exonerate the defendant, and (2) there was resulting prejudice. *State v. Leslie*, 147 Ariz. 38, 47, 708 P.2d 719, 728 (1985); *State v. Reffitt*, 145 Ariz. 452, 461, 702 P.2d 681, 690 (1985). A trial court's decision on whether to give a *Willits* instruction will not be reversed absent an abuse of discretion. *Leslie*, 147 Ariz. at 47, 708 P.2d at 728.

■ Having already found that Hansen was not prejudiced by the unavailability of any of the evidence she maintains was lost, this Court finds that Hansen was not entitled to a *Willits* instruction. Accordingly, we hold that the trial court properly refused to give the *Willits* instruction.

## DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING HANSEN'S MOTION FOR A NEW TRIAL?

■ Hansen filed a motion for new trial based on alleged juror misconduct. In support of her motion, Hansen filed the following affidavit by Juror Gloria J. Still:

> During the deliberations on Saturday, November 23, 1985, I believe after lunch, the following occurred: another juror, Celesta Teague, made a remark such as, This is her (defendant's) second trial; the first trial ended in a mistrial. She also said that she did not remember what the verdict was. Several other jurors, perhaps two or three started asking: a mistrial? Or, a second trial? or words to that effect. I then said words to the effect of: It was because she had difficulty with English and that's why she needs an interpreter. That was the end of the subject and it was not talked about after that.

Hansen notes that under Rule 24.1(c), Arizona Rules of Criminal Procedure, a new trial is authorized if jurors have been guilty of misconduct by receiving evidence not properly admitted during the trial.

■ Where a defendant alleges jurors have considered facts not in evidence, the trial court must grant a new trial if it cannot find beyond a reasonable doubt that the extrinsic evidence did not contribute to the verdict. *State v. Chaney*, 141 Ariz. 295, 311, 686 P.2d 1265, 1281 (1984). However, motions for new trial are disfavored and should be granted with great caution. *Id.* Moreover, deciding whether a defendant is entitled to a new trial is within the sound discretion of the trial court. *State v. Hankins*, 141 Ariz. 217, 222, 686 P.2d 740, 745 (1984). Absent an abuse of discretion, this Court will not disturb the denial of a new trial motion. *Chaney*, 141 Ariz. at 311, 686 P.2d at 1281.

We note that the discussion concerning Hansen's prior trial was short and there was no discussion of the previous verdict. Such a brief and inconsequential conversation was hardly prejudicial to Hansen. Therefore, we find that the trial court did

not abuse its discretion in denying Hansen's motion.

## DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING HANSEN'S REQUEST FOR THE APPOINTMENT OF A NEUROLOGIST?

Prior to trial, Hansen asked the trial court, pursuant to Rule 11, Arizona Rules of Criminal Procedure, to determine her competency to stand trial and her probable mental state at the time of the offense. The trial court granted the motion and appointed Dr. Ronald David and Dr. Edwin Gelardin to examine Hansen. Dr. Gelardin initially found that he could not do an adequate examination because Hansen had a hearing problem. After Hansen was fitted with a hearing aid, Dr. Gelardin reexamined her and concluded that she was competent to stand trial and found no compelling evidence to indicate she was legally insane at the time of the offense. Dr. David reached the same conclusion, but, because there was a possibility that Hansen's hearing impairment and headaches were the result of a postconcussion syndrome,[4] Dr. David suggested that Hansen also be examined by a neurologist.

As a result, Hansen asked the trial court to appoint a neurologist to examine her to determine whether she had postconcussion syndrome. The trial court held a hearing on this request, at which Dr. David again maintained that Hansen was competent to stand trial. However, Dr. David also testified that it was possible, although not highly probable, that Hansen suffered from a postconcussion syndrome. Moreover, Dr. David testified that if Hansen suffered from a postconcussion syndrome he would need to reconsider his opinion that she was competent to stand trial. Nevertheless, Dr. David testified that the presence of a postconcussion syndrome would not necessarily mean that Hansen was not competent to stand trial, and that he felt she would probably still be compe-

tent even if the syndrome existed. At the close of testimony, the trial court, persuaded by Dr. David's testimony that the likelihood that Hansen suffered from the syndrome was not highly probable, denied Hansen's request for the appointment of a neurologist.

The decision whether to appoint an expert is a matter within the discretion of the trial court and will not be reversed absent an abuse of discretion. *Chaney,* 141 Ariz. at 308, 686 P.2d at 1278 (1984); Rule 706(a), 17A A.R.S., Ariz.R.Evid.

Dr. David's testimony indicated that the presence of postconcussion syndrome was not highly probable. Moreover, the doctor indicated that even if the syndrome were present, Hansen would likely still be competent to stand trial. We refuse to adopt a rule that defendants are entitled to every psychiatric test imaginable regardless of possible result, and we find, following a review of the record, that the trial court did not abuse its discretion in denying Hansen's request for the appointment of a neurologist.

## WAS THE PROSECUTOR GUILTY OF MISCONDUCT?

Finally, Hansen argues that the prosecutor used Hansen's lack of English skills to confuse and ridicule her, and to communicate to the jury that her testimony was not credible. According to Hansen, the cumulative effect of the prosecutor's cross-examination was overwhelming, and the jury could not separate the wheat from the chaff. Hansen therefore argues that the trial court abused its discretion in not granting her motion for a new trial based on prosecutorial misconduct.

In determining whether remarks made by counsel in a criminal case are so objectionable as to warrant a new trial, the trial court should consider (1) whether the remarks call to the attention

---

**4.** Postconcussion syndrome occurs after a concussion of the brain and is characterized by amnesia, headache, dizziness, tinnitus, irritability, fatigability, sweating, palpitations of the heart, insomnia, and difficulty in concentrating.

DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1524 (25th ed. 1974). Although Hansen does not specifically claim that she suffered a concussion, she does maintain that Cody physically assaulted her on several occasions.

of the jurors matters that they would not be justified in considering in determining their verdict, and (2) the probability that the jurors, under the circumstances of the particular case, were influenced by the remarks. *State v. Hallman,* 137 Ariz. 31, 37, 668 P.2d 874, 880 (1983). Misconduct alone will not mandate that the defendant be awarded a new trial; such an award is only required when the defendant has been denied a fair trial as a result of the actions of counsel. *Id.; State v. Sustaita,* 119 Ariz. 583, 592–93, 583 P.2d 239, 248–49 (1978). The trial court is in the best position to determine whether an attorney's remarks require a mistrial, and its decision will not be disturbed absent a plain abuse of discretion. *State v. Robles,* 135 Ariz. 92, 94, 659 P.2d 645, 647 (1983).

 After reviewing the prosecutor's cross-examination of Hansen, we do not believe that the prosecutor's questions, or the manner in which they were presented was so prejudicial as to require a new trial. Although the prosecutor may have been impatient with Hansen in some instances, even the trial court noted that it was difficult to get a response from Hansen. Moreover, we note that the trial court is in a better position to judge whether the prosecutor is unduly sarcastic, his tone of voice, facial expressions, and their effect on the jury, if any. Accordingly, we defer to the trial court's judgment in the absence of patent error. We find no such error on the record.

We have searched the record for fundamental error according to the mandate of A.R.S. § 13–4035 and *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and have found none.

Affirmed.

FELDMAN, V.C.J., and CAMERON and HOLOHAN, JJ., concur.

NOTE: Justice JAMES MOELLER did not participate in the determination of this matter.