781 P.2d 624

The STATE of Arizona, Appellee,

v.

Gustavo Cota BARRIOS, Appellant.

No. 2 CA–CR 88–0627.

Court of Appeals of Arizona, Division 2, Department A.

Sept. 26, 1989.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Diane M. Ramsey, Phoenix, for appellee.

Jim D. Himelic, P.C., Tucson, for appellant.

## OPINION

ROLL, Presiding Judge.

Gustavo Cota Barrios appeals from convictions for burglary, aggravated assault, and kidnapping.[1] Because we conclude that the jury instructions regarding duress were adequate, alleged juror misconduct did not require a declaration of a mistrial, and Barrios's direct examination invited the prosecutor to cross-examine him on his post-arrest silence regarding duress, we affirm.

## FACTS

Gustavo Barrios has known co-defendants Antonio Gonzales and Miguel Angel

Murietto Durazo since childhood. On May 25, 1988, Barrios, Gonzales, Durazo, and a woman named Luz went to Christina W.'s apartment in Tucson. Barrios and one of the other men had handguns. The men demanded to know the whereabouts of Chavetto, an individual whom they claimed owed them drugs and money. Christina attempted to reach for the telephone to call for help, but Barrios pushed a handgun into her back and ordered her to put the phone down. Barrios and one of the co-defendants shoved Christina while demanding to know the whereabouts of Chavetto. When Christina insisted that she did not know where Chavetto was, the three men bound her hands and legs, put tape over her mouth, and dragged her to a Ford Bronco parked in front of her house. Luz carried Christina's daughter to the vehicle. Christina's screams for help were overheard by a neighbor who contacted the police.

Christina and her daughter were transported to a motel room registered in Barrios's name. En route, one of the co-defendants repeatedly struck Christina while she was on the floor of the vehicle, telling her that she was stupid for screaming. Eventually, the two co-defendants and Luz left Christina, her daughter, and Barrios in the motel room. At one point, Barrios slid his arm up one of Christina's legs. Christina resisted and went to the other side of the room. Thereafter, while Barrios was in the restroom, Christina attempted to unlock the motel room door and escape, but Barrios grabbed her by the hair and pulled her back. There was no evidence that Barrios at any time told Christina that Gonzales and/or Durazo were coercing him into confining her.

While these events were occurring at the motel, Sergeant Dave Storch of the Tucson Police Department stopped a vehicle matching the vehicle described by Christina's neighbor in connection with the reported abduction. The vehicle was occupied by Gonzales, Durazo, and Luz. Inside the ve-

**1.** Although the state filed a cross-appeal, it did not file a cross-appellant's brief. Accordingly, the state has abandoned its cross-appeal and it is ordered dismissed. *Phillips v. Adler,* 134 Ariz. 480, 481, 657 P.2d 893, 894 (App.1982).

hicle, police found a .44–magnum revolver and a 9–millimeter machine gun pistol with a loaded clip. Luz told the police where Barrios, Christina, and Christina's daughter were located. When the police went to the motel, Barrios promptly surrendered. A 9–millimeter bullet was retrieved from Barrios's pocket. At the police station, Barrios asked that the police contact Agent Miguel Contreras of Alcohol, Tobacco, and Firearms (ATF).

## PROCEDURAL HISTORY

Barrios was indicted for one count of first-degree burglary, one count of aggravated assault, and two counts of kidnapping.[2]

At trial Barrios maintained that Gonzales and Durazo forced him to participate in the crimes. Barrios offered evidence that Gonzales and Durazo had beaten him twice in the past. Barrios produced photographs depicting extensive bruising over the upper half of his body. He attributed these injuries to a beating that he received from Gonzales, Durazo, and others in 1987. Barrios also testified that later in 1987, Durazo and Gonzales dislocated his shoulder. Although at least the first beating was reported to the police, when Barrios reported this incident, he told the officers that he didn't know his assailants' identities.

A jury found Barrios guilty of all counts.

## ISSUES ON APPEAL

On appeal, Barrios argues that error occurred when (1) the trial court instructed the jury regarding the defense of duress, (2) the trial court failed to grant Barrios's motion for new trial based upon juror misconduct, and (3) the trial court refused to grant a mistrial based upon alleged prosecutorial misconduct.

**2.** Gonzales and Durazo were also indicted. Although the state initially alleged that all counts against Barrios were dangerous nature, the allegation that one of the counts of kidnapping was a dangerous crime against children was later dismissed.

### Sufficiency of Jury Instructions

Barrios argues that the jury instructions were inadequate because they failed to instruct the jury that once the defense of duress was raised, the state had the burden of proving beyond a reasonable doubt that Barrios did not act under duress. Barrios relies upon *State v. Hunter*, 142 Ariz. 88, 688 P.2d 980 (1984). In *Hunter*, the following language, contained in one of the jury instructions, was found to constitute fundamental error: "If you decide the defendant's conduct was justified, you must find the defendant not guilty." 142 Ariz. at 89, 688 P.2d at 981. The supreme court concluded that this instruction could create the erroneous impression in the minds of the jury that the accused had the burden of proving justification. *Id.* at 90, 688 P.2d at 982.

Jury instructions must fairly and adequately cover the issues. *United States v. Gere*, 662 F.2d 1291, 1295 (9th Cir.1981). When no objection is made to the giving of a particular jury instruction, we will reverse only for fundamental error. *State v. Chavez*, 143 Ariz. 238, 239, 693 P.2d 893, 894 (1984); *State v. Edgar*, 126 Ariz. 206, 209, 613 P.2d 1262, 1265 (1980).

In the matter before us, the trial court instructed the jury regarding duress and further instructed the jury that the state had the burden of proving all of the elements beyond a reasonable doubt. Barrios did not object to the jury instructions which the trial court ultimately gave. The objectionable language found in *Hunter* was absent from the trial court's jury instructions. Also, the jury was instructed on the overall burden of proof placed upon the state and was instructed that the burden never shifts. The jury instructions were not erroneous. *State v. Cannon*, 157 Ariz. 107, 755 P.2d 412 (1988).

### Juror Misconduct

Barrios next argues that the trial court erred in denying a new trial after it

Co-defendants Gonzales and Durazo entered pleas of guilty and were sentenced to 15 years' and ten years' incarceration, respectively.

was discovered that the jury foreperson brought to the jury room computer printouts describing three possible factual scenarios. Our standard of review regarding the trial court's denial of a motion for new trial based upon juror misconduct is abuse of discretion. *State v. Hansen,* 156 Ariz. 291, 295, 751 P.2d 951, 955 (1988); *State v. Garcia,* 141 Ariz. 580, 583, 688 P.2d 206, 209 (App.1984).

When the foreperson produced the printouts, another juror promptly complained to the trial judge, and the printouts were removed from the jury room. When the verdicts were returned, the trial court ascertained from the jurors that the printouts were not discussed during deliberations and had no impact on deliberations. During the hearing on Barrios's motion for new trial, the trial court made the following observations regarding the juror's computer printout:

> It seems to me after having looked at the computer printout here, it's no different than had [the juror] or anyone else written down his impressions of what the case was all about.

The printouts did not contribute to the verdict. *Hansen,* 156 Ariz. at 295, 751 P.2d at 955. They constituted nothing more than the foreperson's interpretations and impressions of the evidence. *State v. Collins,* 130 Ariz. 280, 282, 635 P.2d 873, 875 (App.1981) (notes of juror regarding excluded evidence, read to other jurors, weren't extrajudicial material). The trial court did not abuse its discretion in denying a new trial based upon juror misconduct.

### Prosecutorial Misconduct

Barrios argues that prosecutorial misconduct occurred during cross-examination of Barrios and during closing argument.

### A. Cross–Examination

■ Barrios argues that fundamental error occurred when the prosecutor cross-examined Barrios regarding his failure to tell the police at the time of his arrest that he had been coerced by Gonzales and Durazo into assisting in the kidnapping of Christina and her child.

In *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court held that a prosecutor may not impeach a defendant on cross-examination with questions concerning the defendant's post-arrest silence. The court held that such use violated the due process clause of the fourteenth amendment. In construing *Doyle,* our supreme court has held that it is fundmental error for a prosecutor to comment on a defendant's post-arrest silence. *State v. Sorrell,* 132 Ariz. 328, 329, 645 P.2d 1242, 1243 (1982).

In the matter before us, Barrios discussed his silence during his direct testimony. The question, then, is whether the prosecutor commits fundamental error when cross-examining the defendant regarding his post-arrest silence after the defendant himself has placed his silence in issue.

On direct examination, Barrios testified that he said nothing to the police when he was arrested except to request that ATF Agent Miguel Contreras be contacted:

> Q [By Defense Counsel] *Did you ever tell any policemen that you had been under these threats,* or did you ever ask to speak to any policemen?
>
> A Yes.
>
> \*  \*  \*  \*  \*  \*
>
> Q [By Defense Counsel] When did that happen?
>
> A When they got my fingerprints there on Park.
>
> \*  \*  \*  \*  \*  \*
>
> Q [By Defense Counsel] When the SWAT team came and you came out with your hands up, *why didn't you tell the first Spanish speaking officer that you had been held against your will?*
>
> A Because I was still frightened, and afterwards when I was on Park I remembered Miguel had told me not to comment on anything, just to tell him.

(Emphasis added.)

When the prosecutor cross-examined Barrios about his failure to tell the police that he had been acting under duress, he was questioning Barrios about a matter

explicitly covered during Barrios's testimony on direct examination. Although Arizona has not addressed this issue, in *Jackson v. State*, 368 S.E.2d 760, 760–61, 258 Ga. 322, 322–23 (1988), the Georgia Supreme Court held that examination of the defendant concerning his post-arrest silence was not error when the defendant testified on direct examination that he had made no statement to police following his arrest. We hold that it is not fundamental error to cross-examine a defendant regarding his post-arrest silence when the defendant chooses to present evidence of post-arrest silence during direct examination.

### B. *Closing Argument*

Barrios argues that prosecutorial misconduct occurred during summation when the prosecutor argued that (1) Barrios's failure to tell the police that his actions had been coerced was evidence of guilt, and (2) Barrios was an informant for the government.

For the reasons previously discussed, it was permissible for the prosecutor to cross-examine Barrios regarding his failure to inform the police that he was acting under duress. Accordingly, it was not misconduct for the prosecutor to then argue this evidence to the jury.

 Barrios also asserts that the prosecutor impermissibly argued to the jury that Barrios was an informant who furnished the police information about illegal activities in exchange for money.

Barrios testified that he wanted Agent Contreras notified of his arrest. During cross-examination, the prosecutor asked Barrios if he was a "snitch" for Agent Contreras. Then the prosecutor, during cross-examination and closing argument, suggested that perhaps people other than Barrios's co-defendants had reason to physically injure him on the previous occasions Barrios had described. This was a permissible inference from the evidence.

Barrios also contends that the prosecutor's questions implied that Barrios was involved in other illegal activities and thereby obtained the information he later relayed to the ATF agent. During cross-examination, the prosecutor did ask Barrios, "[i]sn't it true that when you were working for Mr. Contreras at ATF that you were sort of working both sides of the fence, weren't you?" Barrios denied any illegal activity.

To determine if the prosecutor's remarks were so objectionable as to require a mistrial, the trial court considers (1) whether the remarks called matters to the attention of jurors that they would not be justified in considering, and (2) the probability that the jurors, under the circumstances of the case, were influenced by the remarks. *State v. Hansen*, 156 Ariz. 291, 295–96, 751 P.2d 951, 956–57 (1988); *State v. Hallman*, 137 Ariz. 31, 37, 668 P.2d 874, 880 (1983). Only where the prosecutorial misconduct denies a defendant a fair trial is a mistrial mandated. *Hansen*, 156 Ariz. at 297, 751 P.2d at 957; *Hallman*, 137 Ariz. at 37, 668 P.2d at 880. This court will not disturb the trial court's decision absent an abuse of discretion. *Hansen*, 156 Ariz. at 295, 751 P.2d at 957.

The prosecutor's suggestion that Barrios was "working both sides of the fence" probably did not influence the jury and the trial court did not abuse its discretion in so concluding.

We have searched the record for fundamental error and have found none.

We affirm.

HOWARD and HATHAWAY, JJ., concur.